UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMON L. SMITH,

       Petitioner,                    CIVIL ACTION NO. 04 CV 74233 DT

   v.                               DISTRICT JUDGE LAWRENCE P. ZATKOFF

BLAINE LAFLER,                   MAGISTRATE JUDGE VIRGINIA M. MORGAN

       Respondent.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

      Petitioner Damon L. Smith is a state prisoner who brings this action *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In May of 2000, a jury convicted Petitioner of first-degree premeditated murder, a violation of MCL 750.316, and possession of a firearm during the commission of a felony, a violation of MCL 750.227b.  He was sentenced to life imprisonment for the murder conviction, along with a consecutive two-year term for the firearm conviction.  Petitioner appealed to the state Court of Appeals in September of 2000 and raised three claims.  He then filed a supplemental brief with additional issues, totaling six claims.  The state appellate court affirmed his conviction in May of 2003 and in October of 2003, the Michigan Supreme Court issued an order denying Petitioner's application for leave to appeal.  Petitioner now brings this action for habeas corpus raising the same six issues previously presented to the appellate court.  They are as follows:

- 1 -

1. Was Petitioner denied his state and federal constitutional rights to a fair trial and to the effective assistance of counsel where the trial court refused to adjourn and grant replacement appointed counsel, upon Petitioner's request?

2. Did prosecutorial misconduct deny a fair trial, where:
    a. The prosecutor gave an argumentative and prejudicial opening statement?
    b. The prosecutor prejudicially disparaged the defense?
    c. The prosecutor improperly vouched for Petitioner's guilt?
    d. The prosecutor appealed to the jury's sympathy?

3. Did ineffective assistance of counsel deny a fair trial where:
    a. Trial counsel failed to elicit that the plea agreements of the testifying codefendants greatly benefitted them by eliminating the possibility of being sentenced to mandatory life for first-degree murder, or life of any term of years for second-degree murder?
    b. Trial counsel failed to argue that, as a matter of Michigan law and of due process, Petitioner was entitled to an instruction that intoxication was a defense to the specific-intent crime of first-degree murder?
    c. Trial counsel ineffectively failed to investigate and present an available alibi witness?
    d. Trial counsel ineffectively failed to timely and properly object in regards to issues 1, 2, 4a, 4c, 5 and 6?

4. Do erroneous instructions require reversal, where:
    a. The trial court plainly and prejudicially erred in instructing that codefendants, who had plead guilty and received leniency in exchange for their testimony, were merely disputed accomplice, rather than giving the standard accomplice-testimony instruction?
    b. The trial court erroneously refused to instruct on diminished capacity due to intoxication?
    c. The trial court gave a defective reasonable-doubt instruction?

5. Does cumulative error require reversal?

6. Does newly discovered evidence require reversal?

For the reasons discussed in this Report, it is recommended that the petition be denied.

## II. Background

This case arose out of the death of Darryl Towns, who was killed the evening of September 9, 1999, by multiple gunshot wounds outside his home on Fielding Street in the City of Detroit. The prosecutor's theory of the case is that on the evening in question at approximately 7 p.m. the decedent, Darryl Towns, got into a fist fight with Jonathan Nettles in the decedent's backyard. After the fight, Nettles walked to his own home and called Patrick Roberts, Petitioner's brother, because he had gotten beat up and wanted revenge (Trial Transcript dated 4-5-00, pp 35-38). When Nettles called Roberts, Petitioner was the one who answered the phone and heard Nettles' story at which point Petitioner instructed Nettles to come pick him up. Nettles and his friend Lynell Drake drove over to Petitioner and Roberts' home and picked up both Petitioner and his brother, at which point Petitioner instructed Nettles to drive to the home of Arteece Thomas, who was Petitioner and Roberts' cousin. Petitioner and Roberts went inside their cousin's house, where Petitioner asked to borrow Thomas' loaded pistol (Trial Transcript dated 4-5-00, p 66). Petitioner and Roberts came out and asked Nettles to open the trunk before they got back in the car (Trial Transcript dated 4-5-00, pp 43-44). The four of them stopped at another friend's house as well as a liquor store before returning to the area of the decedent's house.

Nettles, Petitioner, Roberts and Drake got out of the car and walked down the alley toward the decedent's home with a bat and something in a white sock (Trial Transcript dated 4-5-00, p 46), which later turned out to be a gun. Drake and Nettles approached the decedent first, and Nettles got into another fight with him; Roberts joined the fight. Decedent's cousin, Joseph

Marshall, was present and tried to break up the fight but was unable to do so (Trial Transcript dated 4-5-00, p 90-91). Once decedent was on the ground curled up in a ball, Marshall testified at trial that he said he was going to go get his gun to break it up (Trial Transcript dated 4-5-00, p 99). At that point, another person, whom Marshall described as older than the teenagers involved in the fight, came across the street with a pistol and shot the decedent (Trial Transcript dated 4-5-00, pp 92-96). After the shooting, Nettles, Roberts and Petitioner ran back to the alley, with Roberts and Petitioner arriving at the car shortly after Nettles and they drove away. At trial, Nettles testified that Petitioner told him that he shot the decedent in the stomach and in the leg, but that Nettles should say that he, Nettles, hired someone named Buzz to kill Towns (Trial Transcript dated 4-5-00, pp 49-51).

Petitioner has maintained throughout the proceedings that he was not present when Darryl Towns was shot, and his account of what happened the evening of September 9, 1999 differs from that of the other witnesses. At trial, Petitioner testified under oath that Nettles came to his house voluntarily, without being asked to come over, and that is where Nettles told Petitioner about the fight with the decedent (Trial Transcript dated 4-5-00, p 152). Petitioner asked Nettles to drive him over to Thomas' house to get the money his cousin owed him. Petitioner testified that because Thomas did not have the $100-150, he took a pistol as collateral. Petitioner testified that he put the gun in the trunk of the car, and denied that it was ever in a white sock (Trial Transcript dated 4-5-00, pp 154-155). After stopping by another friend's house and a liquor store, Petitioner asked Jonathan to take him home because he said he did not want to

- 4 -

fight with the teenagers, at which point Petitioner testified he was dropped off at his home, over a mile away from the Towns residence (Trial Transcript dated 4-5-00, pp 156-158).

Petitioner testified that he heard about the shooting from his cousin, Thomas, later that night and that he voluntarily turned himself into the police without any knowledge of the whereabouts of the gun he had left in the trunk. Petitioner maintains that he was not on Fielding Street the night of September 9, 1999 and that he did not shoot and kill Darryl Towns (Trial Transcript dated 4-5-00, pp 159-160).

The jury heard testimony from multiple eyewitnesses, including Petitioner's brother, naming Petitioner as the shooter. After proper instruction and deliberation, the jury returned a verdict of guilty for both the first degree premeditated murder charge as well as the charge for possession of a firearm during the commission of a felony.

**III.  Standard of Review**

A petition for a writ of habeas corpus is the exclusive federal remedy available to a state prisoner who challenges the constitutionality of his confinement and seeks a speedier or immediate release. 28 U.S.C. § 2254; *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). Because the petition before the court was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), the court reviews the petition under the standard set forth in 28 U.S.C. § 2254(d), which states the following:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The court reviews issues of law or mixed questions of law and fact under § 2254(d)(1). After the enactment of the AEDPA, courts struggled to fashion an appropriate standard of review under § 2254 (d)(1), and there was considerable disagreement amongst the circuits as to the level of deference federal courts were required to give state court decisions regarding issues of federal law. In *Williams v Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000), the Supreme Court sought to clarify the standard of review under § 2254 (d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The court further discussed the "unreasonable application" clause, noting that "a federal habeas court may not issue the writ simply because that concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522. The reasonableness of the decision is judged by an objective rather than a subjective standard. *Id.* at 1521-22.

With regard to questions of fact, which are reviewed under § 2254(d)(2), the state court's findings of fact are "presumed to be correct." 2254(e)(1). The habeas petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.*

**Issue One: Petitioner was not denied his state and federal constitutional rights to a fair trial and to the effective assistance of counsel where the trial court refused to adjourn and grant replacement appointed counsel.**

The first claim Petitioner presents is that his constitutional rights were violated because the trial court failed to grant replacement counsel when he requested it on the first day of trial. Petitioner argues that the attorney inexplicably withdrew his alibi defense, that their attorney-client relationship had a fundamental breakdown when counsel moved for a psychological evaluation of Petitioner, and that counsel did not visit Petitioner in jail to discuss the trial, nor did counsel help him understand the pre-trial discovery materials.

The Sixth Amendment guarantees a defendant the right to counsel. Consistent with that provision, the Michigan Court of Appeals in *People v. Mack* ruled that an indigent prisoner is entitled to appointed counsel, but he is not entitled to counsel of his choice. He is also not entitled to change counsel whenever he is dissatisfied with the counsel already appointed. Substitute counsel is only required if the defendant can show good cause and if substitution will not unreasonably disrupt the judicial process. Good cause is defined as including where a defendant can demonstrate a complete breakdown of the attorney-client relationship. *People v. Mack,* 190 Mich App 7, 14; 475 NW2d 830 (1991).

Petitioner points to several items evidencing a breakdown in the attorney client relationship. The court found that petitioner made the decision to withdraw his alibi defense

with counsel. (Trial transcript dated 4-3-00, p 13). Therefore, his claim now that counsel should have been substituted because he withdrew a valid affirmative defense without explanation does not rise to the level of good cause.

Counsel's request for a psychological evaluation of Petitioner had a solid foundation, because Petitioner's mother and sister reported that he had been acting erratically since he and his girlfriend had broken up. (Trial Transcript dated 4-3-00, p. 22) Petitioner did not object to the characterization, he merely moved for substitute counsel. This difference of opinion on one detail does not equate to a fundamental breakdown in the attorney-client relationship in regards to trial strategy. Therefore, the trial court did not demonstrate abuse of discretion by denying Petitioner's request for counsel substitution.

Petitioner's claim that trial counsel was not prepared for trial is without merit. He complained that counsel did not discuss the case with him until "the other week," and he did not feel he was being adequately represented (Trial Transcript dated 4-3-00, pp 35-38), however this hardly demonstrates a break-down in the attorney-client relationship. The Sixth Amendment guarantees defendants the right to adequate representation, but those who do not hire and pay for their own lawyers do not have a cognizable right to request substitution of counsel so long as the representation they are receiving is adequate. *Morris v. Slappy,* 461 U.S. 1, 75 L. Ed. 2d 610 (1983). Petitioner did not show good cause, therefore the trial court judge did not abuse his discretion upon denial of Petitioner's motion for replacement of appointed counsel on the first day of trial.

None of Petitioner's claims as to why he should have a new lawyer appointed created good cause to prove there was a complete breakdown in the attorney-client relationship. Petitioner was receiving adequate representation from his appointed lawyer. Therefore, he is not entitled to habeas relief.

> **Issue Two:    Prosecutorial misconduct did not deny petitioner a fair trial and does not require reversal.**

Petitioner next argues that he was denied a fair trial by the prosecutor's commission of the following acts of misconduct: an argumentative and prejudicial opening statement, prejudicial disparagement of the defense, improper vouching for Petitioner's guilt, and appealing to jurors' sympathy.

In analyzing this claim, the court is guided by the principle that prosecutorial misconduct must be "so egregious so as to render the entire trial fundamentally unfair." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). The court must decide whether the prosecutor's statements likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. In order to warrant habeas relief, the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial. *Id.* The court must consider the degree to which the remarks may have misled the jury, if the comments were isolated or extensive, if they were deliberate or accidental, and the strength of the proof establishing the guilt of the accused. *Serra v. Mich. Dept. of Corrections*, 4 F.3d 1348, 1355-56 (6th Cir. 1993).

Although some of the prosecutor's opening statements bordered on argument, they reflected the evidence presented at trial. The Court of Appeals concluded that Petitioner's trial was not rendered unfair by the prosecutor's misuse of an argumentative opening statement and

defense counsel's failure to object procedurally bars this issue as a claim for habeas relief. *People v. Smith,* unpublished per curiam opinion, p. 3, Michigan Court of Appeals No. 229661.

Petitioner argues that the prosecutor improperly disparaged the defense by making reference to "smoke screens" and "curve balls" during a rebuttal argument. (Trial Transcript dated 4-6-00, p 32) While this remark might have been deliberate, it was isolated and narrow and cannot be said to have misled the jury. Because the evidence against Petitioner was strong, and jurors are presumed to follow the court's instructions, the misconduct was not sufficiently pervasive for the court to conclude that it poisoned the entire trial.

Petitioner claims the prosecutor improperly vouched for Petitioner's guilt by commenting to the jury that Petitioner had lied on the stand and was able to turn on and off emotion. (Trial Transcript dated 4-6-00, p 14) This statement was isolated and, because they had witnessed Petitioner's testimony along with the prosecutor, the jury could make its own determination.

The record indicates that, in his closing argument, the prosecutor improperly appealed to juror sympathy by referring to the victim's mother and reminding the jury that she will never see her son again. (Trial Transcript dated 4-6-00, p 20) However, any appeal to the juror's sympathy by that statement was negated because the prosecutor also informed the jury that they were to decide the case based on the facts alone, not because of any sympathy they may feel. (Trial Transcript dated 4-6-00, p 20) Additionally, when delivering instructions, the trial judge made a point to inform the jury that sympathy must not influence their decision. (Trial Transcript dated 4-6-00, p 37) The short, isolated statement that appealed to the jury's sympathy

was part of an extensive closing argument, and therefore did not penetrate the entire message enough to mislead the jurors and result in a fundamentally unfair trial for Petitioner.

Petitioner has failed to show that the Court of Appeals resolution of this issue was unreasonable under 28 U.S.C. § 2254. This court agrees that these remarks were not prejudicial in light of the strong proof of Petitioner's guilt. Petitioner should be denied habeas relief on his prosecutorial misconduct claims because the state court's decision was neither contrary to nor an unreasonable application of federal law. Moreover, this claim is procedurally barred because the defense's failure to properly object during the trial is an independent and adequate state law ground for refusing to review for trial errors. *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991).

> **Issue Three:   Petitioner was not denied a fair trial because of ineffective assistance of counsel.**

In petitioner's third claim based on ineffective assistance of counsel, he cites four specific instances. (1) Trial counsel failed to elicit that the plea bargain agreements of the testifying codefendants greatly benefited them by eliminating mandatory life sentences. (2) Trial counsel failed to argue that Petitioner was entitled to an instruction that intoxication was a defense. (3) Trial counsel failed to investigate and present an available alibi witness. (4) Trial counsel failed to timely and properly object to matters at trial.

In order to establish ineffective assistance of counsel, petitioner must show that counsel's performance was deficient, and that such performance prejudiced the defense, i.e., that counsel's errors were so serious as to deprive petitioner of a fair trial. See, *Strickland v. Washington*, 466 U.S. 668 (1984). Judicial scrutiny of a counsel's performance must be highly deferential. *Id*. at

689.  Because of the difficulties in assessing counsel's performance, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* 466 U.S. at 689 (citing *Michel v Louisiana*, 350 U.S. 91, 101 (1955)).  Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland, supra.*  Under the 1996 amendments to the Habeas Corpus Statute (AEDPA), a federal habeas court gives "double deference," that is, its determination is whether the state court's decision was an unreasonable application of the *Strickland* standard.  Under this level of review, counsel was not ineffective.

There is no showing that the result of the proceeding would have been different and Petitioner cannot show that the trial court's determination was an unreasonable application of the *Strickland* standard.  Petitioner's claim that counsel did not draw out that benefits received by prosecution witnesses in exchange for testimony is inconsistent with the record.  Counsel questioned each witness about their plea agreement, and acknowledged that they were each no longer going to have to go to trial with an open murder charge.  (Trial Transcript dated 4-5-00, pp 58-59, 119-121, 141; Trial Transcript dated 4-6-00, pp 28, 30).

The Michigan Court of Appeals rejected petitioner's claim that counsel was ineffective for failing to object when an instruction of the intoxication defense was not included.  *People v. Smith*, unpublished per curiam opinion, p. 4, Michigan Court of Appeals No. 229661.  The Court

of Appeals properly applied the Constitutional test when reaching their decision in respect to this claim and were reasonable. Therefore, Petitioner is not entitled to habeas relief.

Petitioner's claim that counsel is at fault for failing to investigate and question a possible alibi witness is also unfounded because Petitioner made the decision along with counsel to abandon the alibi defense after an unsuccessful attempt to pursue it through the use of an investigator. (Trial transcript dated 4-3-00, p 13).

The Court of Appeals decided that Petitioner's argument that counsel was ineffective for failing to timely and properly object to other matters was cursory, and insufficient to properly preserve it for review. *People v. Smith*, unpublished per curiam opinion, p. 4, Michigan Court of Appeals No. 229661. This ruling was not unreasonable or contrary to any U.S. Supreme Court decision.

Accordingly, there is no merit to Petitioner's claim of ineffective assistance of counsel. He has not shown facts indicating that the representation fell below an objective standard or prejudiced him. Petitioner has not carried his burden and is not entitled to habeas relief on this claim.

**Issue Four: Erroneous instructions do not require reversal**

Petitioner's fourth habeas claim is that erroneous jury instructions require reversal. Specifically, he points to three separate issues with the instructions: (1) the trial court erroneously refused to instruct on diminished capacity due to intoxication; (2) the trial court gave a defective reasonable-doubt instruction; (3) the trial court erred in instructing that

codefendants, who had plead guilty and received leniency in exchange for their testimony, were disputed accomplices, rather than giving the standard accomplice-testimony instruction.

Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims cognizable in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of federal constitutional rights.  Matlock v. Rose, 731 F.2d 1236, 1242 (6th Cir. 1984), cert. denied, 470 U.S. 1050 (1985).

Habeas relief for constitutional trial errors will only be granted when the error had substantial and injurious effect or influence in determining the jury's verdict.  Brecht v. Abrahamson, 113 S.Ct. 1710 (1993)  A violation that is not of constitutional magnitude is generally not cognizable in federal habeas proceedings, regardless of whether it is a breach of federal or state law.  Pulley v. Harris, 465 U.S. 37, 41-42 (1984), Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994)  Errors of the application of state law are not to be questioned in federal courts.  Waters v. Kassulke, 916 F2d. 329, 335 (6th Cir. 1990).  However, habeas relief may be granted for errors not of constitutional magnitude, but instead based upon errors of federal law, when there is a "fundamental defect which inherently results in a complete miscarriage of justice" standard.  Reed v. Farley, 114 S.Ct. 2291, 2297 (1994).

Petitioner's basic claim that the instruction violated state law is without merit.  Michigan Court of Appeals case *People v. Piper* mandates that jury instructions be reviewed in their entirety to decide if the trial court was erroneous with the instructions.  Even if the instructions are not perfect, they do not create an error that would require reversal or a new trial if the

instructions presented the issues in a fair manner and protected the defendant's rights to a sufficient degree. *People v. Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997).

With respect to the trial court's refusing to use a diminished capacity instruction, the appellate court correctly notes that there is no evidence at trial supporting a defense based on intoxication. *People v. Smith,* unpublished per curiam opinion, pp 2-3, Michigan Court of Appeals No. 229661. Additionally, an instruction was included that the jury must find that Petitioner had the specific intent to kill, and that he did so deliberately after substantial reflection. The ability to substantially reflect would not be present in a person who had diminished capacity due to intoxication. Therefore, omitting an instruction with regards to diminished capacity was not an error because it was covered in another instruction that the jury received.

> The trial court's definition of reasonable doubt was as follows:
>
>> What's a reasonable doubt, a reasonable doubt is a fair honest doubt, which can come from the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense. Now, Lord knows we need you to use your reason and common sense to look at the evidence as you should anything, and apply your reason and common sense in determining the facts of this case.
>>
>> A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

(Trial Transcript dated 4-6-00, p. 40)

Defendant's objection to the reasonable doubt instruction was without merit because the instruction used was based on CJI2d 3.2, and the Michigan Court of Appeals reasonably found it

to be sufficient. The last instruction argument was about the trial court erring when it instructed the jury on accomplice testimony by a disputed accomplice, as opposed to an undisputed accomplice cannot be raised at this point because the defense waived the issue by approving the given instructions.

Therefore, petitioner has failed to support his claim of state law violations, and in any event, has not shown any "fundamental defect." Thus, his habeas relief on this claim should be denied.

**Issue Five:    Cumulative error does not require reversal**

Petitioner's claim that the combination of errors alleged served to deprive him of a fair trial is without merit. Alone, or in conjunction with one another, none of the errors were sufficiently prejudicial to render Petitioner's trial fundamentally unfair. The Michigan Court of Appeals' rejection of this claim is not unreasonable, nor is it contrary to any U.S. Supreme Court decision and therefore this claim does not establish cause for habeas relief.

**Issue Six:    Newly discovered evidence does not require reversal**

In his final claim, Petitioner argues that newly discovered evidence requires his conviction to be reversed. The evidence is a letter that Petitioner's brother, Patrick Roberts, wrote to Petitioner in jail. The letter stated that Roberts only testified against Petitioner because the two actual perpetrators told him if he said anything, they would kill him.

A state case, *People v. Lester*, sets forth a four-prong test to determine if newly discovered evidence bears enough weight to warrant a new trial. Upon review of newly discovered evidence, a new trial will only be granted if the evidence is (1) actually newly

discovered, (2) not merely cumulative, (3) such as to render a different result probable on retrial and (4) unavailable for discovery at trial. *People v. Lester,* 232 Mich App 262, 271 (1998). Although the letter was discovered after the trial and could be considered not merely cumulative, the third factor was not duly satisfied because Roberts was not the prosecution's only witness to testify as to the guilt of Petitioner, so it is not probable that a new trial would conclude with a different result. Additionally, it is unclear whether or not the letter would have been discoverable at the time of trial because it is undated, and thus it may or may not have been written prior to the end of the discovery period. However since it refers to Roberts' testimony at trial, it can be assumed that it was written after Petitioner was convicted.

       The Michigan Court of Appeals rejected Petitioner's claim that discovery of new evidence should require reversal of his conviction. The appellate court pointed to *People v. Canter*, which states that "where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v. Canter,* 197 Mich App 550, 559; 496 NW2d 336 (1992). The Court of Appeals noted that because there were multiple witnesses besides Roberts who testified against Petitioner, it is not probable that the letter would change the result if the issue were retried. *People v. Smith,* unpublished per curiam opinion, pp. 4-5, Michigan Court of Appeals No. 229661.

       This determination by the Michigan Court of Appeals is not contrary to clearly established Federal law. The U.S. Supreme Court held that the existence of newly discovered evidence which could be relevant to whether or not a state prisoner was guilty is not ground for

relief on federal habeas corpus. *Townsend v. Sain*, 372 U.S. 293, 317 (1963). Therefore, Petitioner's claim in regards to the newly discovered evidence is not cognizable.

**IV. Conclusion**

For the reasons stated in this Report, this court recommends that Petitioner's request for habeas relief be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                             s/Virginia M. Morgan
                                             VIRGINIA M. MORGAN
Dated: October 24, 2005               UNITED STATES MAGISTRATE JUDGE

- 19 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMON L. SMITH,

        Petitioner,                 CIVIL ACTION NO. 04 CV 74233 DT

   v.                                  DISTRICT JUDGE LAWRENCE P. ZATKOFF

BLAINE LAFLER,                   MAGISTRATE JUDGE VIRGINIA M. MORGAN

        Respondent.
_____/

## **REPORT AND RECOMMENDATION**

---

## **PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon Damon L. Smith and counsel of record via the Court's ECF System and/or U. S. Mail on October 24, 2005

                                        s/J Hernandez
                                        Case Manager to
                                        Magistrate Judge Virginia M. Morgan