# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DAMON L. SMITH,
       Petitioner,

CASE NO.  04-CV-74233-DT
HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

V.



BLAINE LAFTER,
       Respondent.
_____/

FEB 2 4 2006

CLERK'S OFFICE
DETROIT

## MOTION FOR CERTIFICATE OF APPEALABILITY

The Petitioner, Damon L. Smith in Pro se, respectfully asks that this Court Grant this Motion for Certificate of Appealability, and further states:

1.  Petitioner was convicted in 2000 by a Michigan Court, after a jury trial, of first degree murder and felony firearm.

2.  Petitioner is now serving a term of 2 years for felony firearm, and natural life without parole for first degree murder.

3.  On December 21, 2005, this Court denied Petitioner habeas Corpus Relief by adopting the Magistrate's Report and Recommendation stating that Petitioner failed to object.

On January 3, 2006, Petitioner filed a Rule 60(b) Motion For Relief from Judgment asserting that a mistake has been made because Petitioner did timely Objected to the Magistrate's Report and Recommendation.

On January 19, 2006, this Court denied Petitioner's Rule 60(b) Motion for Relief from Judgment, but stated that the Court agrees that it failed to note the receipt of Petitioner's Objections, and concluded that

Petitioner's Objections are without merit.

4. While this Court has not squarely ruled on the issue, the majority of Circuits which have hold that appeals from the denial of such motions in habeas corpus cases are subject to the requirement of 28 U.S.C.A. §2253 that a Petitioner must obtain a Certificate of Appealability (COA) "as a prerequisite to appealing the denial of a Rule 60(b) motion." Gonzalez v. Crosby, 545 U.S. __; 125 S.Ct. 2641 (2005).

Furthermore, without explicitly ruling on the question of statutory interpretation involved, in Gonzalez a majority of the Supreme Court characterized such a requirement as a "plausible and effective screening device."

5. Petitioner respectfully request a Certificate of Appealability for his Rule 60(b) Motion for Relief form Judgment in order to obtain the proper de nova review for his claims of constitutional violations. Upon the Court's notion that Petitioner failed to object waived his right to de nova review of his constitutional claims. The Court stated that they thoroughly reviewed Petitioner's file and Motions, but however, a thorough review would have revealed an incomplete record. In order to properly review Petitioner's file the necessary Motions must be Granted. (Exhibit A).

6. Petitioner has been denied habeas corpus review, because of a mistake that was not on his behalf. Petitioner never received an opinion by the Judge as to why he is denied habeas relief, or why his Motions were not granted.

Petitioner is being unconstitutionally detained for the rest of his natural life. This Court is his last means of relief. At the least, Petitioner should be afforded a fair and extensive review of his constitutional claims.

7.  It is of course, in determination whether to grant equitable relief such as is envisioned by Rule 60(b)(1), it is appropriate to weigh the opposing interests.  In light of "the public policy favoring disposition of cases on their merits" Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004), the nature of the judgment here at issue seems to militate toward a lessened interest, while the Petitioner's interest in having his constitutional challenges to convictions which have led to his imprisonment for life seems especially great.  As the eighth Circuit put the matter in Cornell v. Nix, 119 F.3d 1329, 1333 (8th Cir. 1997): "Cornell is serving a life sentence.  In discussing equitable considerations, we cannot ignore the fact that lifetime imprisonment under a mistaken legal ruling is a "quintessential miscarriage of justice." See Schlup,[v. Delo,] 513 U.S. [298,] 324, 115 S.Ct. [851,] 865-66 [(1995) (referring to execution of an innocent person)" Petitioner here is likewise serving a life sentence, and his federal constitutional claims have never received federal review.  Thus, Petitioner is only seeking a chance to have his Motions Granted and his constitutional claims properly examined.

8.  On February 17, 2006, Petitioner Damon L. Smith filed a notice of appeal in order to cross-appeal from this Court's denial of Petitioner's request for habeas relief.

9.  Petitioner Damon L. Smith now respectfully requests that this Court GRANT a Certificate of Appealability for all of Petitioner's Constitutional claims.

10.  On January 19, 2006, this Court concluded in a denial of Petitioner's Motion for Relief From Judgment that Petitioner's Constitutional claims are without merit.

On July 22, 2005, Petitioner filed a Supplemental Brief which

was meant to be a Reply Brief under Rule 5 and a Motion for Evidentuary Hearing with a Brief to support the Motion. (Dated on docket 7/22/05 #19 Order referring other matters)

On October 28, 2005, Petitioner filed a Motion for order to compel filing of Rule 5 material. The Evidentuary Hearing Motion and the Motion to Compel Rule 5 Material are of paramount importance in order to validate and establish Petitioner's Constitutional claims. With the necessary Evidentuary Hearing and Rule 5 Material Petitioner will be able to fully prove that he is detained under denial of his Constitutional Rights regarding the Sixth Amendment right to assistance of counsel and a fair trial that is part of Due Process clause of the Fourteenth Amendment. Likewise proving that Petitioner's constitutional claims does have merit.

Therefore, Petitioner asks that this Court find that Petitioner can demostrate that reasonable jurists would find the district Court's assessment of his Constitutional claims debatable, and GRANT Petitioner's constitutional claims, Motion for Evidentuary Hearing, and Motion to Compel Rule 5 Material a Certificate of Appealability.

11. Petitioner respectfully request that this Court take a second look at the merit's of Issue I for the Granting of a Certificate of Appealability as followed:

Petitioner claims that he was denied his state and federal constitutional rights to a fair trial and to the effective assistance of counsel where the trial court refused to adjourn and grant replacement appointed counsel.

Petitioner argued that his trial attorney inexplicably withdrew his alibi defense, that their attorney-client relationship had a fundamental breakdown when counsel moved for a psychological evaluation of Petitioner,

and that counsel did not visit Petitioner in jail to discuss the trial, nor did counsel help him understand the pre-trial discovery material.

This Court concluded that none of Petitioner's claims as to why he should have a new lawyer appointed created good cause to prove there was a complete breakdown in the attorney-client relationship.

On the contrary, Petitioner strongly states in his Motion to Compel Rule 5 Material and affidavit in support of a Evidentuary Hearing, (Exhibit A) that there was no attorney-client relationship and Judge Warfield Moore, Jr. clearly establishes the reason needed for Petitioner's replacement of trial counsel.

At Petitioner's arraignment before Judge Warfield Moore, he clearly provided the sole reason needed for replacing his trial attorney at arraignment when he told him that "if he did not come to visit Petitioner that he would be forced to fire petitioner's trial attorney."

Petitioner was proceeding to fire his trial attorney at his October 22, 1999 arraignment, but was lead to believe by Judge Moore that his trial attorney was a very fine Lawyer and would be to see Petitioner.

There was numerous legitimate differences of opinions between Petitioner and his appointed counsel regarding fundamental trial tactics. Petitioner had an available alibi witness that was never presented. (Exhibit B) Petitioner testified to the corroboration of his alibi witness regarding his whereabouts during the commission of this crime. (T.T. L.14-20 p.175 & l.1-4 p.176 (Exhibit B)) At sentencing in the presence of trial counsel, Petitioner requested a new trial, because of trial counsel's failure to present his alibi witness. Trial counsel never refuted his ineffectiveness, nor did he state that both him and Petitioner decided not to present a alibi witness. Judge Moore did not deny Petitioner's Motion for new trial because Petitioner

willingly signed off on the alibi defense.   Instead, Judge Moore blamed
Petitioner for failing to present his alibi witness himself. (S.T. p.13-15
(Exhibit B))

Petitioner has always confessed his innocents.   There was never
a need for a psychological evaluation, because Petitioner was not at the crime
scene.   In order to request an psychological evaluation without the consent
of a client, the attorney must believe that the client is guilty but incoherent
to his actions.   If Petitioner states that he is innocent, and his trial
attorney believes that he is guilty, there is without a doubt a fundamental
breakdown.

The difference in opinion is evident throughout trial which proves
that a complete breakdown in attorney-client relationship existed.   If
Petitioner's trial attorney believed that Petitioner was innocent he would
have presented the available alibi witness.   Trial attorney would have also
presented various police officers that would have established a foundation
based upon their investigation and professional experience that could have
rebutted the prosecutor's witnesses, and substantiated Petitioner's innocents.
To further expound on the veracity of the attorney-client breakdown and
difference in opinion regarding a fundamental trial tactic.   Petitioner's
trial attorney requested for the jury's deliberation "a lack of presence"
and "diminished capacity instruction."   One infers innocents, and the other
one infers guilt but mentally incoherent.   (Petitioner is not inferring that
there was not testimony given to support these instruction, but Petitioner
needs to demonstrate the extent of attorney-client conflict and breakdown).

When Petitioner's trial attorney requested to be withdrawn he
could not supply a meaningful ethical reason, because it was personal.   It
is not that there is any evidence that validate Petitioner's conviction, its

solely the fact that Petitioner was denied effective assistance of counsel that validates his conviction.

12. Petitioner respectfully request that this Court take a second look at the merit's of Issue II for the Granting of a Certificate of Appealability as followed:

Petitioner claims that he was denied a fair trial by the prosecutor's commission of the following acts of misconduct: an argumentative and prejudicial opening statement, prejudicial disparagement of the defense, improper vouching for Petitioner's guilt, and appealing to jurors' sympathy.

This Court concluded that Petitioner failed to show that the Court of Appeals resolution of this issue was unreasonable under 28 U.S.C. §2254, nor was the Court's decision contrary to or an unreasonable application of federal law. This Court also agrees that these remarks were not prejudicial in light of the strong proof of Petitioner's guilt.

In light of the ineffectiveness of counsel that was forced upon Petitioner, and the lack of necessary evidence to support the prosecution's witnesses testimonies. The evidence against Petitioner would appear to be strong, but in fact this trial was nothing more then a credibility contest with the prosecutor being the foundating witness.

The prosecutor took advantage of the duality of guilt and innocents presented within trial counsels case, and took advantage of the fact underlining Petitioner's attorney's lack of meaningful participation.

In this case everything that the prosecutor stated effected negatively against Petitioner's right to a fair trial. All of the necessary evidence to support the prosecutor's witnesses testimony was non-existing. Even the police whom investigated and analyze the crime scene, and was capable of supporting the prosecutor's witnesses testimony was waived. This case

lacks the substance to regard the prosecutor's misconduct as meaningless to the outcome of Petitioner's trial. The prosecutor's conduct was fundamentally unfair to Petitioner's Constitutional right to a fair trial.

Petitioner respectfully request that this Court further examine the content of the Prosecutor's misconduct. This Court never stated that the prosecutor statements does not equate to misconduct, but that they were not prejudicial in light of the strong proof of Petitioner's guilt. Petitioner proves in Issue six that this case was just a credibility contest, there is no necessary evidence to support conviction, ineffective assistance of counsel, the prosecutor should have known of perjured testimony presented, and that Petitioner is "actually innocent." This issue is strongly debatable, and was very prejudicial in light of the strong proof of Petitioner's innocents. This issue is not procedurally barred because Petitioner filed ineffective assistance of counsel failure to object to this issue.

13. Petitioner respectfully request that this Court take a second look at the merit's of Issue III for the Granting of a Certificate of Appealability as followed:

Petitioner claims that he was denied a fair trial because of ineffective assistance of counsel such as. (1) Trial counsel failing to elicit that the plea bargain agreements of the testifying co-defendants greatly benefited them by eliminating mandatory life sentences. (2) Trial counsel failed to argue that Petitioner was entitled to an instruction that intoxication was a defense. (3) Trial counsel failed to investigate and present an available alibi witness. (4) Trial counsel failed to timely and properly object to matters at trial.

This Court claims that there is no merit to Petitioner's claim of ineffective assistance of counsel. Petitioner has not shown facts

indicating that the representation fell below an objective standard or prejudiced him. Therefore, Petitioner has not carried his burden and is not entitled to habeas relief on this claim.

Petitioner has clearly shown within his Motion for a Evidentuary Hearing and affidavit to support trial counsel's ineffectiveness. (Exhibit A) Counsel's ineffectiveness was forewarned through counsel's Motion to withdraw as Petitioner's attorney.

At Sentencing Petitioner had an elaborate conversation with Judge Moore about the ineffectiveness of his trial attorney. Petitioner even wrote a letter to Chief Judge Karen Ford Hood explaining the extent of his trial counsel's ineffectiveness and violation of his guaranteed Constitutional Rights. (S.T. p.3-4 (Exhibit C))

Petitioner had witnesses and a defense. Petitioner requested for Judge Moore to question his trial attorney as to why Petitioner's witnesses was not presented, but Judge Moore ignored Petitioner's request and placed the blame on Petitioner. (S.T. p.13)

Petitioner's trial counsel could have provided proof to Petitioner's alibi and lack of presence through the absence of relevant evidence. Trial counsel conducted a complete murder trial without solidifying proof that the said murder weapon was actually the weapon that committed the murder. (S.T. p.11-13)

Petitioner's trial counsel's ineffectiveness has an substantial amount of merit. Trial counsel fell below an objective standard, and clearly prejudiced Petitioner.

This Court does not deny that Petitioner's trial counsel was ineffective. This Court just has not been shown the facts in support of this claim. Petitioner clearly needs an Evidentuary Hearing in order to carry

his burden of proving counsel's ineffectiveness.

14. Petitioner respectfully request that this Court take a second look at the merit's of Issue IV for <u>Granting</u> of a Certificate of Appealability as followed:

Petitioner claims that erroneous jury instructions require reversal. There are three separate instructions: (1) the trial court erroneously refused to instruct on diminished capacity due to intoxication; (2) the trial court gave a defective reasonable-doubt instruction; (3) the trial court erred in instructing that co-defendants, who had plead guilty and received leniency for their testimony, were disputed accomplices, rather than giving the standard accomplice-testimony instruction.

This Court concluded that Petitioner has failed to support his claim of state law violations, and in any event, has not shown any "fundamental defect."

The instructions that are given to the jury is the essential rudiments to securing our Constitutional guarantee to a fair and partial jury, and to a fair trial. Absent the correct jury instructions, justice by a jury trial and Constitutional rights that protect such becomes obsolete.

Petitioner has been denied the protection that our Constitution provides by the trial Court's failure to correctly instruct and the denial of another valid jury instruction. Petitioner's jury could not have given a substantial verdict when they have not been given substantial instructions.

In Petitioner's case the denial and incorrect jury instructions denied his Constitutional right to a fair and partial jury and to a fair trial. This Court has misinterpreted the fact regarding Petitioner's case. Therefore, Petitioner submits an un-bias description given within his pre-sentence investigation report of this case. (Exhibit D)

In regards to the disputed accomplice instruction, Petitioner was tremendously prejudice. This was not Petitioner's battle. Petitioner never even met decedent Towns. The only person that mentioned Petitioner as being involved is Patrick Roberts. (Who has since recanted his testimony) Everyone else decided to specifically implicate Petitioner once the plea agreements were introduced. There stories were so fabricated that they negated the necessary physical evidence. The accomplices said that they ran before the commission of the crime, and the prosecutor's other witness said that they watched. In fact the exact crime scene was never established, nor was the full extent of the accomplice's and the other prosecutor's witnesses contradictions against each others. This is all important, because this "disputed accomplice" instruction gave veracity to false testimony. This erroneous instruction also shifted the burden of proof upon Petitioner after the case was close.

This case was a credibility contest. The fact that the jury did not have to weigh the accomplices testimony, denied Petitioner a fair trial. The jury was never under the impression that they were not accomplices. They got on the stand and testified to their involvement. This claim is so outstanding regarding the denial of Petitioner's Constitutional Rights that it would create a miscarriage of justice if ignored.

Petitioner and the accomplices gave valid testimony that Petitioner was drinking. This Court quoted the Court of Appeals insinuation that there is no evidence at trial supporting a defense based on intoxication. This statement given by the Court is bias and prejudicial. It can also be said that there is no evidence at trial that supports Petitioner actually committed this crime. The decision as to justifying the denial of a valid instruction prejudiced Petitioner's trial process.

The defected reasonable doubt instruction is unconstitutional. The instruction given was not the reasonable doubt instruction that should have been given. This Court never denied that the jury instructions were wrong, but justifies the means as to why it was alright to give wrong instructions. This issue has merit, fundamentally defected trial, and denied Petitioner a fair and partial jury, and a fair trial.

15. Petitioner respectfully request that this Court take a second look at the merit's of Issue V for Granting of a Certificate of Appealability as followed:

Petitioner claims that cumulative error requires reversal.

This Court concluded that along, or in conjunction with one another, none of the errors were sufficiently prejudicial to render Petitioner's trial fundamentally unfair.

Petitioner was denied effective assistance of counsel. Petitioner's trial counsel never presented his available alibi witness. There was never a time schedule established to refute Petitioner being at home during the commission of this crime. The breakdown between attorney-client was so serious that it was as though Petitioner did not have counsel.

Petitioner was made to endure the prejudice of the prosecutor's misconduct. This whole case was validated by the prosecutor's determination to convict Petitioner. The prosecutor's main witness Patrick Roberts was committing perjury. The absence of physical evidence revealed this fact.

The jury instructions was tainted to benefit Petitioner's conviction. Since two of the accomplices stated that they did not see Petitioner shoot decedent Towns in which they should have according to other Prosecutor's witnesses, these instruction were given to shift the burden on Petitioner to prove his innocents.

Petitioner's Newly Discovered Evidence brings everything into the light. Patrick Roberts admits to perjury, but also gives valid information to unanswered questions regarding the crime. Patrick also states why he implicated Petitioner in the beginning. There is so much more of this case that needs to be exposed. Petitioner did not commit this crime, and if given a new trial it is more likely that Petitioner will be found not guilty.

The effects of cumulative errors deprived Petitioner of his Constitutional Rights.

16. Petitioner respectfully request that this Court take a second look at the merit's of Issue VI for <u>Granting</u> of a Certificate of Appealability as followed:

Petitioner claims that Newly Discovered Evidence requires his conviction to be reversed.

This Court concluded that Petitioner's claim in regards to newly discovered evidence is not cognizable.

Petitioner is being held in violation of his Constitutional Rights in regards to Newly Discovered Evidence. This Newly Discovered Evidence proves that Petitioner's trial counsel was ineffective for failing to investigate the necessary evidence to support Petitioner's conviction. Petitioner's trial counsel never established a specific crime scene in order to validate the relevance of the prosecutor's witnesses testimony. There was two possible crime scenes, one being in the house and the other is outside. Trial counsel also failed to establish if the said gun that Petitioner retrieved was actually the murder weapon. The evidence that trial counsel failed to investigate should have been established in order to verify the relevance of a trial. The evidence is insufficient to support the required elements for first-degree murder.

The prosecutor should have know that perjured testimony was being presented at trial. There was no evidence to support the testimonies given as evidence. The accomplices contradicted the prosecutor's other witnesses. The prosecutor lied to the jury about the fifth accomplice being a neighbor, and the decedent not having a gun during his rebuttal argument.

The ineffective assistance, prosecutor misconduct, insufficient evidence supports Petitioner's newly discovered evidence issue. Petitioner also proves a claim of "actual innocents" within the newly discovered evidence. This newly discovered evidence can not be dismissed as unreliable, because there is more evidence to support the newly discovered evidence (letter and affidavit) then there was Mr. Roberts' trial testimony. Patrick Roberts was the key witness in Petitioner's trial. Without Mr. Roberts there would not be a first-degree murder conviction. Without Mr. Roberts testimony upon retrial Petitioner cannot be convicted of first-degree murder. Therefore, to ignore Mr. Roberts confession within the newly discovered evidence will create a miscarriage of justice. This Court will actually establish that it is alright to be convicted of perjured testimony, but deny Petitioner relief because of perjured testimony. This newly discovered evidence deprives Petitioner of his Constitutional right to a fair trial, right to counsel, and of due process.

This Court ignored the sworn affidavit submitted by Patrick Roberts with Petitioner's newly discovered evidence. This affidavit has not been contradicted, therefore it is presumed as true. Winsett v Donaldson, 69 Mich App. 36. It was also properly filed in the Michigan Supreme Court. Caver v. Straub, 349 F3d 340, 347 (6th Cir. 2003) Accordingly, Petitioner has solidified that he has been convicted on perjured testimony which has triggered a due process violation, because this Court has denied Petitioner relief.

This Court has repeated the same "manifest injustice" as the State Court of Appeals. This issue has yet to be preserved. The denial of Petitioner's Motion to Remand, then the denial of preservation has created a "manifest injustice." <u>People v LaPlaunt</u>, 217 Mich App 733 (1996)(Reversed and Remanded).

16. Where a district court has rejected a habeas Petitioner's constitutional claims on the merits, the Petitioner, to obtain a Certificate of Appealability (COA), must demostrate that reasonable jurists would find the district Court's assessment of the Constitutional claims debatable or wrong. <u>Slack v McDaniel</u>, 120 S.Ct. 1595.

17. In light of an unbias description given within Petitioner's pre-sentence investigation report, given the absents of necessary physical evidence to support this case, and the fact that this case was a credibility contest. I hope that this Court will conclude that a reasonable jurists would find the district Court's assessment of Petitioner's Constitutional claims are at least debatable.

For these reasons, Petitioner Damon L. Smith asks that this Court grant this request for a Certificate of Appealability for all of the claims presented in the petition.

Respectfully submitted,

By: _____

DAMON L. SMITH  #311644
In Pro se
SAGINAW CORRECTIONAL FACILITY
9625   Pierce Road
Freeland, Michigan  48623

Date: February 17,2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

DAMON L. SMITH,
        Petitioner,

CASE NO.   04-CV-74233-DT
HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

VS

BLAINE LAFTER,
        Respondent.
_____/

F I L E D
FEB 2 4 2006
CLERK'S OFFICE
DETROIT

## BRIEF IN SUPPORT OF MOTION FOR CERTIFICATE OF APPEALABILITY
### THE FACTS

On December 21, 2005, this Court Accepted and adopted the Magistrate's Report and Recommendation stating that Petitioner has failed to object.

On January 3, 2006, Petitioner filed a Rule 60(b)(1) Motion For Relief From Judgment asserting that a mistake has been made because Petitioner did timely Object to the Magistrate's Report and Recommendation.

On January 19, 2006, this Court denied Petitioner's Rule 60(b)(1) Motion For Relief From Judgment, but stated that the Court agrees that it failed to note the receipt of Petitioner's Objection, and concluded that Petitioner's Objections are without merit.

Petitioner now request a Certificate of Appealability for the denial of his Rule 60(b)(1) Motion.

On February 17, 2006, Petitioner DAMON L. SMITH filed a Notice of Appeal in order to cross-appeal from this Court's denial of Petitioner's request for habeas relief.  Petitioner DAMON L. SMITH now request that this Court Grant a Certificate O Appealability as to all of the claims in his Petition so that the Court of Appeals may consider his cross-appeal.

## A R G U M E N T   I

**PETITIONER WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE TRIAL COURT REFUSED TO ADJOURN AND GRANT REPLACEMENT APPOINTED COUNSEL, AND FORCED DEFENDANT TO GO TO TRIAL WITH UNPREPARED COUNSEL**

Trial counsel Steven Taratuta was appointed to defend Petitioner Damon L. Smith in his trial for First Degree Murder.

Mr. Taratuta did not make himself available to Petitioner during the Pre-trial Stages, which created an alarm in Petitioner regarding his best interest not being represented.

Petitioner had many questions regarding discovery packet and preliminary examination transcripts, but could not pose them because Mr. Taratuta refused to visit him at the County Jail.

Petitioner presented witnesses who could corroborate his alibi, namely Latoya Smith, who Mr. Taratuta failed to contact.

Petitioner provided Taratuta with the facts as he knew them regarding the day of Darryl Towns death. Facts that included his whereabouts at the time the crime, as well as his actions prior and after which included a period of excessive drinking. Facts Mr. Taratuta failed to investigate or address in preparation for trial. Instead Mr. Taratuta on the day of trial and without Petitioner's knowledge, placed Patricia Roberts, Petitioner's mother on the stand and began to question her about Petitioner's mental competency. Presumably in an effort, to present a defense of insanity for the charges against petitioner wherefore Petitioner objected to the Court and made a Motion for Appointment of New Counsel.

Petitioner made an effort to explain to the Court that Mr. Taratuta had not been to see him; had not taken action to

investigate a defense that in fact Mr. Taratuta was not prepared to go to trial, that the question of his mother in regards to his mental competency was not known nor agreed to by him, that in fact he and Mr. Taratuta had a severe breakdown in their Attorney-Client relationship.

In this exchange, Petitioner attempted to make a "Good Cause" showing that replacement counsel was necessary. People v. O. Williams, 386 Mich 565; 194 NW2d 337 (1972).

Petitioner's attempts to establish this "Good Cause" showing but was repeatedly thwarted by Trial Judge Warfield Moore Jr., who conducted himself in a manner that subsequently lead to his being suspended from the bench for similar conduct in other judicial matters.

Judge Moore's denial of Petitioner's request to substitute counsel amounted to an abuse of discretion by denying Petitioner rights to establish his reasoning for making the request. Judge Moore's failure to inquire into Petitioner's allegations, and his concerns for expediting the proceedings over his duty to safeguard Petitioner's 6th Amendment right to counsel and 14th Amendment right to a fail trial clearly establishes an abuse of discretion.

Under the Federal law the appropriate standard or review is Abuse of Discretion U.S. v. Mills, 597 F2d 693 (1979); People v. Charles O. Williams 386 Mich 565,573, 194 NW2d 337 (1972); People v. Flores, 176 Mich App 610, 440 NW2d 47 (1989); People v. Meyers, (on rem) 124 Mich App 148, 335 NW2d 189 (1983); People v. Anglin, 111 Mich App 268, 314 NW2d 581 (1981).

Petitioner sought to discharge defense counsel, stating that counsel "didn't come and see me about nothing and about nothing about this case." Counsel had not even come to see him about the case "until the other week." The trial court refused to permit the discharge of counsel. (T, 35-39; 4/3/00). Then defense counsel sought to withdraw, based on defendant's unhappiness with his representation. The trial court denied the motion. (T, 39; 4/3/00).

The Sixth Amendment guarantees that: "In all criminal proceedings, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defense."

> The Assistance of Counsel. . .is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . .The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done."

> Johnson v. Zerbst, 304 US 458,487; 58 S.Ct. 1019; 82 L.Ed 1461 (1938).

> Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.

United States v. Cronic, 466 US 648,654; 104 S.Ct. 2039; 80 L Ed2d 657 (1984).

"That a person who happens to be a lawyer is present at the trial alongside the accused is not enough to satisfy the constitutional command." Powell v. Alabama, 287 US 45,58; 53 S.Ct. 55; 77 L Ed 158 (1932). Defendant had a Sixth Amendment right to the affective assistance of counsel. Wilson v. Mintzes, 761 F2d 275 (CA 6, 1985); Linton v. Perint, 656 F2d 207,211-212

(CA 6, 1981). A criminal defendant also has a right under the State Constitution and by statute to defend an action through counsel. Const 1963, art 1 § 13; MCL 600.1430. Further, a defendant has the due-process right to a fundamentally fair trial. Powell, supra, US Const. AM XIV.

In People v. Charles O. Williams, 386 Mich 565,577-578; 194 NW2d 337,342 (1972), on the day the trial began, defense counsel moved to withdraw because the defendant had retained other counsel. (The replacement counsel was then in a jury trial in another court.) The trial court denied withdrawal and denied a continuance. The Michigan Supreme Court held that the defendant had been denied his Sixth Amendment right to counsel stating:

> The trial judge indicated that the case had been delayed on several previous occasions and that she desired to avoid further delay. If this in fact were true, and if the delay had been at defendant's insistent, then this would be an important factor to consider in determining whether to grant a continuance. But, the record does not substantiate the trial court's comment in this regard. The docket journal shows that this cause was adjourned on two separate occasions with no reason given in either instance. The second adjournment occurred after defendant filed a motion to quash the information and it appears that the court denied the motion and set the trial date of November 8, 1967, at that time. Hence, we have an adjournment and no evidence that it was at defendant's request. The court further stated that it felt this was merely a delaying tactic and that it was concerned about the witnesses who were present for trial. Both of these matters are, of course, legitimate factors to consider in ruling on defendant's motion. However, there is no evidence in the record before us that this was a delaying tactic, and a great deal of evidence that it was not for purposes of delay.

Williams, set forth a four-factor test for determining whether a trial court has abused its discretion in failing to

allow a continuance for the substitution of counsel:

(1) Was the accused asserting a constitutional right, i.e., the right to counsel?

(2) Did the accused have a legitimate reason for asserting this right?

(3) Was the accused guilty of negligence?

(4) Had the accused caused the trial court to be previously adjourned? <u>Williams</u> held that the trial court abused its discretion in denying defense counsel's motion to withdraw, refusing a continuance, and preventing defendant from changing attorneys.

> The defendant requested a continuance in this case to obtain a new lawer. The right to assistance of counsel is a precious constitutional right. It is probably the most important right of any defendant in a criminal trial. Without needlessly prolonging this opinion by citation of authority, we might point out the importance of this right in our legal system. . .It is guaranteed by the U.S. Constitution and this State since Michigan entered the Union. This right has been jealously protected by the courts and is of critical importance to any defendant in a criminal trial. Hence, whenever this right is asserted the trial court must take special care to insure that it is protected.

<u>Williams supra</u>, 194 NW2d at 342. In response to the prosecutor's argument that the trial court was attempting to clear up the docket and avoid unnecessary delays, <u>Williams</u>, stated: "We agree that the courts must do everything necessary to avoid delay. But, this cannot include interfering with a defendant's right to a fair trial."

Similarly, in <u>People v. Ferguson</u>, 46 Mich App 331; 208 NW2d 647,651 (1973), on trial date the court-appointed defense

counsel moved for a short continuance so that newly-retained counsel could represent defendant. Appointed counsel was not prepared for trial because defendant had not notified him that he had retained counsel the previous week. The trial judge stated he was without authority to grant a continuance because of a local court rule leaving continuance up to the Chief Judge. The Ferguson Court held this ruling was an abuse of discretion under the Charles O. Williams factors, stating:

> The right to a fair trial is so basic to our system of justice that we cannot allow blind adherence to a local court rule to deprive an accused of his right to proceed with retained counsel of his own choice.

In People v. Johnson, 245 Mich App 658; 547 NW2d 65,6869 (1996), the trial court sub sponta removed appointed counsel, two months before trial apparently because appointed counsel was vigorously contesting the trial court's power to order the defense to provide disclosure of prior-conviction information. Defendant, represented by other counsel was convicted and appealed. The Michigan Court of Appeals found that the removal of defendant's counsel was error. This "unjustified removal of counsel during a critical stage in the proceedings implicates the Sixth Amendment right to counsel because that right attaches at or after the initiation of adversary judicial proceedings against the defendant." Johnson, held that once an attorney-client relationship has been established, "the trial court may not arbitrarily remove the attorney over the objection of both the defendant and counsel." Conversely, the trial court may not arbitrarily compel a client to be represented by appointed

counsel, where both the client and the attorney seek withdrawal.

Analysis of the four <u>Williams</u> factors shows that the trial defendant to exercise his constitutional right to counsel.

(1) WAS THE ACCUSED ASSERTING A CONSTITUTIONAL RIGHT, i.e. THE RIGHT TO COUNSEL? It is beyond dispute that the Petitioner was asserting his Constitutional Right to counsel. He attempted to express his dissatisfaction with counsel, but the trial court's interruptions effectively prevented him from setting forth the basis for his attempt to remove counsel.

(2) DID THE ACCUSED HAVE A LEGITIMATE REASON FOR ASSERTING THIS RIGHT? Petitioner had a legitimate reason for asserting the right to counsel. Petitioner offers to prove at an evidentiary hearing that the basis for removal of trial counsel was that he had failed to properly assert and support his alibi defense through failure to investigate alibi witness Latoya Smith, to support and assert an intoxication defense, and adequately meet with Petitioner for trial preparation. Petitioner sought to make these points to the trial court. Petitioner had raised his hand, and the trial court gave him permission to speak. The following exchange took place:

> THE DEFENDANT: Yes, sir, there is something I have to say I would like to dismiss my lawyer for the simple fact of--
> THE COURT: You're not going to do that either. Mr. Smith, you're not going to sit here--you know what, you want ·to play an [sic] around with justice, you want to do everything all the way up to this time because you want to do it.
> THE DEFENDANT: That's not true.
> THE COURT: No, sir. You're not going to dismiss your lawyer. Mr. Taratuta is a fine lawyer he's well able to represent you. Go on tell me why do you want that?

THE DEFENDANT: Because, first of all, he didn't come and see me about nothing and about nothing about this case. And he's going on assumptions of my family, and I feel as though that I'm misrepresented by Mr. Taratuta. Therefore I feel as though that I cannot have the fair trial that I am supposed to have due to the fact of his assumptions.

THE COURT: What is it you think Mr. Taratuta didn't do for you that he should have done?

THE DEFENDANT: There's a number of things.

THE COURT: Well just tell me one.

THE DEFENDANT: Mr. Taratuta did not hear any of the questions that I had to raise about my case...Reading my transcript and going over it and coming to--

THE COURT: What transcript, you haven't testified to anything?

THE DEFENDANT: No, I'm talking about my discovery packet they gave me.

THE COURT: What about it, sir, that you think he hasn't gone over?

THE DEFENDANT: He haven't listened to none of my reasons. [Sic]

THE COURT: Reasons for what sir, shooting and killing somebody?

THE DEFENDANT: I thought a lawyer and a--

THE COURT: You have this nebulous reasoning, what are you talking about, what is he supposed to do that he hasn't done, sir?. . .(T, 35-37, 4/3/00)

The trial court thereafter asked Petitioner, "Now, anything else you want to say?" Petitioner responded, "I really feel as though--" The trial court then interrupted to state:

Well you can feel that way all you wish, sir, but there is nothing I see on this record that would indicate Mr. Taratuta is less than adequate to represent you. Because the Towns Folks have a right to get this case over with. And we have 52 jurors coming back in an hour--

THE DEFENDANT: Mr. Taratuta haven't even came to see about this case until the other week, I'm just now getting my--

THE COURT: Sir, sit down and be quiet sir, you've added, no we're not going to dismiss him. Thank you, very much, Mr. Smith, have a seat.

MR. TARATUTA: Your Honor, based on his statement and his unhappiness with my representation I feel I have to make the Motion to Withdraw.

THE COURT: Well no you can't. He can do that all the time, every lawyer he gets, he can get right

up to the date of trial and say that. Mr. Taratuta
you have done everything unless you tell me you feel
that you have not done adequately what you think
you ought to do to represent, or you have some strong
reason you know of why you can't represent I'm not
going to do that, sir. And if you tell me that, sir,
you have to tell me why. . .(T, 38-39; 4/3/00).

The trial court accused defendant of "doing nothing but
a stall." (T, 40; 4/3/00). The trial court stated, "he could
do that with every lawyer. . .Every defendant over there charged
with a crime could do that and we could never try cases. . .he's
been here a number of times and he's never once raised that
issue." Petitioner responded, "Yes I have." The trial court
ignored him. (T, 40; 4/3/00).

The trial court failed to fairly consider that in adequate
pre-trial preparation and consultation with the client can
constitute ineffective assistance. <u>Groseclose v. Bell</u>, 130 F3d
1161,1169 (CA 6, 1997) ("especially appalling" aspects of trial
counsel's ineffective representation included failure to conduct
any meaningful adversarial challenge, as shown by failure to
cross-examine more than half of the prosecution's witnesses,
to object to any evidence, and failure to adequately communicate
with defendant prior to trial).

Further, although the trial court concededly has an interest
in moving its docket, that interest would not have been sufficient
reason in itself to refuse to replace appointed counsel.

The prompt disposition of criminal cases is to be
commended and encouraged. But in reaching that result
a defendant, charged with a serious crime must not
be stripped of his right to have sufficient time

> to advise with counsel and prepare his defense. To
> do that is not to proceed promptly in the calm spirit
> of regulated justice but to go forward with the haste
> of the mob.

Powell v. Alabama, 287 US at 59. A myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality," Ungar v. Sarafite, 376 US 575,589; 84 S.Ct. 841; 11 L Ed2d 921 (1964). "The desire of the trial courts to expedite court dockets is not a insufficient reason to deny an otherwise proper request for a continuance." People v. Charles O. Williams, supra.

The trial court did not specifically base its ruling on the need to expedite the court docket. However, if that is deemed implicit in the ruling, a desire to expedite litigation could not have been sufficient to work the abridgment of the right to counsel.

. (3) WAS THE ACCUSED GUILTY OF NEGLIGENCE? Petitioner was not negligent in making his request on the eve of trial. Even where a request to change counsel of choice is made "on the eve of trial," it may not be arbitrarily denied. Woods v. Morris, 963 F2d 374 (CA 6, 1992) (allegations of lack of communication and attorney preparation required remand for evidentiary hearing to determine whether right to retained counsel of choice was denied).

In this case, the timing was beyond Petitioner's control. He was in jail, and his counsel would not visit him sufficiently to prepare for trial. Petitioner had made an earlier attempt to bring this point to the Court's attention on October 22, 1999 at his Circuit Court arraignment, but his efforts went unheard. Petitioner again sought to bring to the court's attention his

view of defense counsel, the trial court repeatedly interrupted him and cut him off when the trial court asserted that Petitioner had never raised this issue previously. Petitioner attempted to explain that this was incorrect, he was again cut off by the trial court. Petitioner offers to prove at an evidentiary hearing that he was not guilty of negligence in any way, and that if given the opportunity he would have put on the record at trial that counsel had failed to sufficiently communicate with him and to prepare for trial.

(4) HAD THE ACCUSED CAUSED THE TRIAL TO BE PREVIOUSLY ADJOURNED? "The right to assistance of counsel. . .may not be put to service as a means of delaying or trifling with the court." United States v. Fowler, 605 F2d 181,183 (CA 5,1979), cert den 445 US 950 (1980). Here the trial court opined that Petitioner was stalling, but it gave no basis for seeking new counsel. The trial court significantly did not find that defendant had previously caused the trial to be adjourned. The docket entries show that the case was adjourned by the trial court, and by the prosecutor, but not by the Petitioner. (See docket entries for October 29, 1999, and December 10, 1999 in court file.) This important factor should have weighed strongly in defendant's favor.

Denying a continuance and forcing Defendant to trial with an unprepared associate whom defendant did not want was an abuse of discretion. See People v. Bruinsma, 34 Mich App 167; 191 NW2d 108,113-114 (1971) (trial court abridged defendant's Sixth Amendment right to effective assistance by denying continuance

12

and forcing defendant to trial with unprepared attorney, with whom defendant had discussed case).

In <u>Morris v. Slappy</u>, 461 US 1; 103 S.Ct. 1610; 75 L Ed2d 610 (1983), an indigent defendant was represented by the public defender's office. His original public defender (Goldfine) fell ill, and was replaced six days before trial by another public defender, senior trial attorney (Hotchkiss). Hotchkiss reviewed the file, consulted with the client, and prepared for trial, spending the bulk of two days preparing with the client. On the first day of trial, defendant complained that Hotchkiss could not be prepared for trial and sought a continence, but the second day of trial defendant again sought a continence because Hotchkiss did not have enough time to prepare, and again Hotchkiss told the court he had done all the necessary investigation and preparation.

When that tact failed, defendant brought up attorney Goldfine for the first time saying Goldfine "was my attorney and he still is." Then the defendant complained that not even Goldfine had had enough time to prepare the case. The trial court refused to adjourn to allow further time for Hotchkiss to prepare, or for Goldfine to resume the defense and defendant indicated he would not cooperate in the trial and asked to be returned to his call.

Defendant was convicted on some of his offenses without the jury reaching a verdict on others. At a subsequent trial on the remaining counts, defendant was still represented by Hotchkiss, he refused to cooperate with or even speak to his

lawyer. The Ninth Circuit held that defendant was denied a "meaningful" attorney-client relationship. The Supreme Court reversed, a five-member majority holding that the Sixth Amendment right to counsel did not entitle this indigent defendant to a "meaningful attorney-client relationship" with his appointed counsel.

Petitioner is not claiming a constitutional right to a meaningful attorney-client relationship. Rather, he is claiming that he has the right to appointed counsel who is at least reasonably well prepared and who has demonstrated by his conduct that he is ready, willing and able to competently and zealously advocate on behalf of his client.

The Ninth Circuit's reasoning in Morris was that denial of a "meaningful" attorney-client relationship was equivalent to having no counsel at all, and therefore the defendant did not need to show prejudice. Because the Supreme Court in Morris rejected the Ninth Circuit's premise that defendant was entitled to a "meaningful" attorney-client relationship, it did not reach the question of prejudice stating in footnote 6: "Our holding that there is no Sixth Amendment right to a 'meaningful' attorney-client relationship disposes of that argument." Morris, 461 US at 14.

However, Justice Brannan, joined by Justice Marshall did specifically and thoughtfully address the issue of prejudice in Morris. As Justice Brennan percaptively noted,

> The fact that a defendant has been arbitrarily denied
> his interest in preserving his relationship with

14

a particular attorney, with the result that the attorney does not appear, means that there is no record on which to base judgments regarding prejudice. . .[T]here is no way to know whether the character of the proceedings would have changed, whether counsel would have made different decisions, or whether the defense strategy would have been different if [the absent lawyer] had represented [a defendant]. Conclusions based on inquires into such questions would amount to nothing more than "unguided speculation." Under these circumstances, it is reasonable and just not to require a showing of prejudice.

Morris, 562 US at 29 (Brannan, J., concurring in result). Justice Brannan focuses on the problem. The absence of the attorney makes it extremely difficult, if not impossible to specifically identify the ways in which a client was prejudiced by being denied a change in appointed counsel.

The defendant in Morris was not making a good-faith request to adjourn the trial, but a bad-faith attempt to bring the wheels of justice to a haly. There is no comparison with the Morris and the instant case.

Here, in this case the Sixth Amendment right to counsel is implicated, a harmless error analysis is not applicable, and the defendant need not show prejudice to prevail. People v. Johnson, supra; Brecht v. Abrahamson, 507 US 619; 113 S.Ct. 1710; 123 L Ed2d 353,367,373 (1993). The denial of defendant's constitutional right to counsel is a structural error affecting the integrity of the trial, and requires automatic reversal.

Petitioner therefore looks to the guidance of the Federal Court in U.S. v. Mills, 597 F2d 693 (1979) which reviews the denial of a motion to substitute counsel for abuse of discretion under a three factor test:

15

(1) TIMELINESS OF THE MOTION,

(2) ADEQUACY OF THE COURT'S INQUIRY INTO THE DEFENDANT'S COMPLAINT,

(3) WHETHER THE CONFLICT BETWEEN THE DEFENDANT AND HIS ATTORNEY WAS SO GREAT THAT IT RESULTED IN A TOTAL LACK OF COMMUNICATION PREVENTING AN ADEQUATE DEFENSE.

(1) TIMELINESS OF THE MOTION. The Federal Court has recognized a motion to substitute counsel as timely if filed on the day of trial. Brown v. Craven, 424 F2d 1166 (1970), Bland v. California Dept. of Corrections, 20 F3d 1469 (1994). The Court in Morris entertained the defendant's motion on the second day of trial. Petitioner made his attempt to bring before the trial court his motion to substitute counsel on the first day of trial, and before the prosecution began to put forth its case. It is further noted that Petitioner was not making his reasons known for the first time with the trial court, but had first attempted to alert the court of his problems with trial counsel at his court arraignment on October 22, 1999 approximately 7 months prior. Petitioner seeks to prove these claims at an evidentiary, but has also made several attempts to obtain the transcripts of this court appearance, including having filed a Rule 5 Motion with this Honorable Court. Petitioner was not negligent in putting forth his motion of substitution and is therefore in compliance to the first Mills factor.

(2) ADEQUACY OF THE COURTS INQUIRY INTO DEFENDANT'S COMPLAINT. The trial court gave Petitioner's motion an insufficient inquiry. Petitioner alleged that counsel had not

come to see him and had not come to discuss anything pertaining
to his case. The court posed no direct questions to counsel,
as to his visits to Petitioner dates, times or frequency. The
court instead left it to counsel to investigate his own errors.
The court instructed counsel in the following manner: . . ."Mr.
Taratuta you have done everything unless you tell me you feel
that you have not done adaquately what you think you ought to
do to represent I'm not going to do that, sir. And if you tell
me that, sir, you have to tell me why. You have to tell me why
after all of these months, and all this time other than what
you've already brought up you can't. Now he knows the truth,
you can only operate on what you're told, that's why I had this
separate record." (T, 39; 4/3/00).

    The Court improperly shifted its duty to investigate
Petitioner's claims onto counsel, which is recognized by the
Federal Courts to create a conflict of interest. U.S. v. Delmoro,
87 F3d 1078 (9th Cir 1996). The Court's comments were in response
to counsel's Motion to Dismiss, in light of the Petitioner's
Motion to Substitute Counsel, that the court had repeatedly
interrupted and virtually ignored do to its brass and biased
conduct. In its response, the court continued to ignore its duty
to investigate the claims of Petitioner, instead taking an
increasingly impatiant and accusing attitude towards Petitioner.
The Court continued: "You're not a magician, we can't solve--
open his head and say this is indeed the truth. He's doing nothing
but a stall. He's doing nothing, but a stall, trying to prevent
justice from occurring not to aid it." (T, 40, 4/3/00).

The Court at no time made afforts to determine if there was truth to Petitioner's claims. Instead the Court demonstrated similar patterns as those which were found to be substantial for suspension from the bench.

In re Moore, 464 Mich 98, 626 NW2d 374 (2001), found that the pattern of improper judicial conduct by this very same judge merited a substantial suspension from the bench. The Michigan Supreme Court stated:

> Judge Moore's conduct frequently violated the Code of Judicial Conduct and demonstrates on those occasions, a lack of judicial temperament. While the incidents vary in severity and some may ostensibly seem innocuous misconduct may be proven by evidence of an accumulation of small and ostensibly innocuous incidents which, when considered together, emerge as a pattern of hostile conduct unbecoming a member of the judiciary. . .Judge Moore's conduct demonstrates a pattern of persistent interference in and frequent interruption of the trial of cases, impatient, discourteous critical and sometimes severe attitudes towards jurors, witnesses, counsel and others present in the courtroom, and use of a controversial tone and manner in addressing litigants, jurors, witnesses and counsel. This conduct frequently resulted in appellate reversal of trials over which he had presided. Such behavior undermines the judiciary and is clearly prejudicial to the administration of justice. Therefore, we conclude the conduct is of a nature that warrants discipline.

Moore, 626 NW2d at 393. Here, Judge Moore followed the same pattern as was shown in Moore. He interfered with and interrupted Petitioner in his attempt to explain why he should have new counsel, he expressed a severe attitude towards defendant, and used a controversial tone and manner. He failed to make a full and proper inquiry as to Petitioner's basis for dissatisfaction with counsel. United States v. Walker, 915 F2d 480, 483 (CA 9, 1980) (trial court erred in making only a limited

inquiry and failed to inquire into causes underlying defendant's dissatisfaction with his trial attorney); United States v. Lagunas, 48 F3d 1229 (CA 9, 1995) (where defendant sought substitution of counsel, trial court abused its discretion by focusing only on attorney's qualifications and competence; court breached duty "to focus on the nature and extent of the attorney-client conflict") Crandell v. Bunnell, 144 F3d 1213, 1216 (CA 9, 1998), overruled in part on other grounds, Schell v. Witek, 218 F3d 1017 (CA 9, 2000) (adequacy of trial court's inquiry into defendant's complaint must be evaluated in reviewing denial of substitution); United States v. Simeonov, 252 F3d 238,241 (CA 2, 2001) (trial court has a duty to adequately inquire into reasons for seeking new counsel) Mckee v. Harris, 649 F2d 927,933 (CA 2, 1981) (trial court should inquire into reasons for dissatisfaction.

Here the trial court abused its desecration in denying Petitioner's request for substution as it made its decision without any analysis of the basis of his claims, and had it focused on the nature and basis of the claimed attorney-client breakdown, the result would have been different. For these reasons, the second Mills factor should be viewed as having been met by Petitioner.

(3) WHETHER THE CONFLICT BETWEEN THE DEFENDANT AND HIS ATTORNEY WAS SO GREAT THAT IT RESULTED IN A TOTAL LACK OF COMMUNICATION PREVENTING AN ADEQUATE DEFENSE. At the time of Petitioner request for substution there had been no communication from counsel to Petitioner. Petitioner stood accused

19

of a capital offense to which he continues to assert his innocence. Petitioner had provided for counsel information of his alibi and witnesses that could corroborate Petitioner's alibi, however, counsel neglected to interview and prepare witness Latoya Smith for trial. Counsel also made no investigation into the merits of the prosecutions case. Waiving every Police witness set to testify when a discrepancy existed in the prosecutions case, that belied any physical evidence. The prosecution introduced testimony that suggested Petitioner had obtained a .32 automatic handgun that he later used in the shooting he stood accused of. It is however, of material fact that no .32 automatic shell casings were retrieved by Police officers or Evidence technicians responsible for the crime scene, despite the testimonies by witnesses that after shots were fired, all assailants immediately fled.

Counsel also failed to investigate, prepare or assert Petitioner's intoxication defense, where substantial evidence existed to do so. At the time of his request, Petitioner's defense was clearly prejudiced, forcing Petitioner to trial on a murder case with counsel in whom he lacked confidence obviously caused great anxiety and stress, and necessarily interfered with the lawyer's ability to represent his client.

It is the defendant's interest, and freedom, which . . are at stake. Counsel is provided his defense, but in order to do so effectively the attorney must work closely with the defendant in formulating defense strategy. This may require the defendant to disclose embarrassing and intimate information to his attorney. . .Moreover, counsel is likely to have to make a number of crucial decisions throughout the proceeding

on a range of subjects that may require consultation
with the defendant. These decisions can best be made
and counsel's duties most effectively discharged,
if the attorney and the defendant have a relationship
characterized by trust and confidence.

Morris, 461 US at 21 (Brennan, J., concurring in result) Justice

Brennan also quoted extensively from Smith v. Superior Court,

68 Cal2d 547, 440 P2d 65,74 (1968) which was also relied on in

People v. Johnson, supra.

The attorney client relationship. . .involves not
just the casual assistance of a member of the bar,
but an intimate process of consultation and planning
which culminates in a state of trust and confidence
between the client and his attorney. This is
particularly essential of course when the attorney
is defending the client's life or liberty.
Quoted In Morris, 461 US at 24.

In Petitioner's case the trial court denied the request

for a continuance, and forced Petitioner to trial with a lawyer

he did not want and trust. Without a doubt Petitioner and his

defense suffered prejudice. Petitioner offers to prove at an

evidentiary hearing that his counsel failed to adequately consult

with him and otherwise failed to reasonably prepare Petitioner

and his case for trial. Mitchell v. Mason, 257 F3d 554,564-565

(CA 6, 2001) (where counsel only met with defendant briefly in

bullpen prior to jury selection, after counsel's month-long

suspension from practice, presumptively prejudicial denial of

counsel required reversal). In Mitchell, the Court held that:

the pre-trial period must, according to close analysis
of Supreme Court precedent, be considered "critical"
for Sixth Amendment purposes. Therefore, [trial
counsel's] failure to consult with [defendant] for
more than six months, coupled with counsel's month
long suspension from practice, must be considered
a per se denial of counsel because counsel was
"totally absent. . .during a critical stage of the

proceedings."

Mitchell v. Mason, supra at 566, citing United States v. Cronic, 466 US 648,659 n25; 104 S.Ct. 2039; 80 L Ed2d 657 (1984); Const Am VI. See also Powell v. Alabama, at US 69 in which a group of African Americans accused of raping two white girls were not appointed counsel until the day of trial. The Supreme Court found that due process was denied because a criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he is not guilty he faces the danger of conviction because he does not know how to establish his innocence."

> If no actual "assistance" for the accused's defense is provided, then the Sixth Amendment guarantee has been violated. . .Assistance begins with the appointment of counsel, it does not end there." Cronic, 466 US at 654n11. . .The pre-trial period constitutes a "critical period" because it encompasses counsel's constitutional imposed duty to investigate the case.

Mitchell v. Mason, supra at 567; see also Groseclose v. Bell, supra ("especially appalling" aspects of trial counsel's ineffective representation included failure to adequately communicate with defendant prior to trial).

There existed a breakdown of the attorney-client relationship between Petitioner and his counsel at the time Petitioner sought to replace counsel. The trial court should have allowed Petitioner to substitute counsel and proceed with his trial with counsel that would effectively communicate with him and make trial preparations for an adequate defense.

It is necessary to point out that from the court's denial

of Petitioner's request, and its inadequate inquiry into Petitioner's claims the Court created an additional conflict of interest by erroneously placing upon counsel the duty of investigating his own error. (T, 39; 4/3/00).

Once counsel was improperly given this duty to investigate himself, he at that point became the servant of two masters. Providing adequate representation for Petitioner, and not coming under conduct that will prove Petitioner's earlier claims valid in any form.

Counsel made no claim that Petitioner spoke validly about the level of comptence of his pre-trial representation, and it therefore would belie counsel to reveal during the course of trial, evidence that Petitioner did in fact have valid grounds to seek counsels replacement. A decision that may be most beneficial for Petitioner, if it ran afoul to counsel's earlier assertions that he had not rendered incompetent pre-trial representation would be foregone.

Counsel had not properly investigated Petitioner's alibi defense, so he therefore withdrew the defense before trial. This was a decision against Petition's desires as is evident from the testimony given by Petition that continues to assert his innocence and being with Latoya Smith at the time this crime occurred. (T, 175; 4/5/00).

Counsel waived numerous witnesses that would have revealed the lack of physical evidence to support the prosecution theory that a .32 automatic was the weapon used in the shooting of Darryl Towns. Such information, if revealed would automatically reveal

counsel's lack of investigation into this specific area of Petitioner's trial and his inadequate preparation to defend Petitioner.

Once the court placed the duty of investigating his own errors onto counsel he made counsel an adversary to Petitioner, as he can not be deemed to any longer hold Petitioner's best interest at heart. Counsel could not be trusted to possess a sound trial strategy, if he possessed one prior as each decision would then become factored on whether a benefit to Petitioner would expose any lack of preparation on counsel's part.

Counsel's attempt to dismiss himself from representing Petitioner, which was denied by the Court and becomes more complicated as he would now have to proceed on with Petitioner's trial having stated under oath, that he had in no way provided any deficient conduct. It is therefore an irreconcilable conflict of interest having counsel continue to represent Petitioner, Cuyler v. Sullivan, 446 US 261; 67 L Ed2d 220; 101 S.Ct. 1097 (1981) is too great to ignore the prejudice that this placed upon Petitioner's communication and representation with counsel.

Had the trial court engaged in the proper analysis, and particularly had it focused on the nature and basis of the claimed attorney-client breakdown, the result would have been different. "Relief is required."

Lastly, Petitioner states that the state court's ruling is contrary to, and involves an unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court. Williams v. Taylor, 529 US 362, 120 S.Ct. 1495, 146 L

E2d 389 (2000).

The Michigan Court of Appeals cited <u>People v. Mack</u>, 190 Mich App 7, 475 NW2d 830 (1991) in that "appointment of counsel is warranted only upon a showing of good cause and if substitution will not unreasonably disrupt the judicial process."

Petitioner sought to discharge trial counsel as previously stated and was consistently badgered and hindered by trial judge, thus preventing him from creating a complete record on why counsel's discharge was necessary whereas trial judge instead of correcting errors, placed the burden of proving any ineffectiveness that requires a substitution of counsel on trial counsel to show forth. Thus compounding the prejudice of the trial, all of which were contrary to, and involved unreasonably application of clearly established Federal law. <u>Woods v. Morris</u>, 963 F2d 374 (1992); <u>U.S. v. Delmoro</u>, 87 F3d 1078 (9th Cir. 1996); <u>U.S. v. Walker</u>, 915 F2d 480,483 (1990); <u>States v. Lagunas</u>, 48 F3d 1229 (1995); <u>Cuyler v. Sullivan</u>, 446 US 261, 101 S.Ct. 1097, 67 L Ed2d 220 (1981).

Petitioner states that the Court of Appeals decision to affirm his conviction is contrary to clearly established Federal law and wholly unreasonable when considered in its totality, and considering trial court's abuse of discretion in its totality should reverse and grant a new trial.

Petitioner respectfully request that Habeas relief be granted and a new trial be ordered for the denial of his 6th Amendment Right to Counsel and his 14th Amendment Right to a fair trial. Petitioner further respectfully request an evidentiary

hearing as one has never been provided him, to substantiate the claims held within this issue, and show forth that a new trial is warranted should the record be deemed insufficient.

# A R G U M E N T   II

## PROSECUTORIAL MISCONDUCT DENIED PETITIONER
## A   FAIR   TRIAL   AND   REQUIRES   REVERSAL.

In a long series of decisions, the United States Supreme Court has established the proposition that due process of law guaranteed by the Fourth Amendment to the U.S. Constitution cannot tolerate a state criminal conviction where the prosecutor's conduct and overall trial tactics were such as to deprive a criminal defendant of his fundamental right to a fair trial. Caldwell v Mississippi 472 US 320, 105 SCt. 2633, 86 LEd 2d 231 (1985); Miller v Pate 386 US 1, 7, 87 SCt. 875, 17 LEd 2d 690 (1967); Brady v Maryland 373 US 83, 83 SCt. 1194, 10 LEd 2d 215 (1963); Napue v Illnios 360 US 264, 271 79 SCt. 1173, 3 LEd 2d 1217 (1959); Mooney v Holohan 294 US 103, 55 SCt. 340, 79 LEd 791, 98 ALR 406 (1935). Under federal law, the appropriate standard of reveiw is whether the defendant was denied a fundamentally fair trial. U.S. v Young 470 US 1, 11, 105 SCt. 1038, 84 LEd 2d 1 (1985); Seizmore v Flecter 921 F2d 667 (6th Cir. 1990); Stumbo v Seabold 704 F2d 910, 911 (6th Cir. 1983).

In the present case, the cumulative effect of the prosecutor's misconduct before the jury in order to obatin a conviction denied Petitioner DAMON L. SMITH of his right to a fair trial. U.S. Const. Am. XIV.

In Petitioner's case prosecutorial misconduct occurred when the prosecutor 1) gave an argumentative and prejudicial opening statement, 2) when the prosecutor prejudicially disparaged the Defense, 3) when the prosecutor improperly vouched for defendant's guilt and injected his personal opinion of guilt by telling the jury he was lying, 4) when the prosecutor improperly appealed to sympathy.

The Supreme Court stated that conduct of prosecutors must meet a high standard, in that, "criminal prosecution is not that it shall win a case, but that justice shall be done". "He may prosecute with vigor indeed, he should do so. But, while he may

strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. Berger v U.S. 295 US 78, 55 SCt. 629, 79 LEd 1314 (1935).

Thus it is the duty of the prosecutor to advance the state's cause with force and persuasiveness. However, this duty encompasses concerns beyond mere advocacy. The prosecutor has a concomitant duty not to derogate from a fair and impartial criminal proceeding.

Stated in slightly different terms, the state's conduct in prosecuting the defendant may determine whether or not a defendant is accorded his or her constitutional right to a fair trial. Viereck v U.S. 318 US 236, 63 SCt. 561, 87 LEd 734 (1943)[finding that the prosecutor's conduct prejudiced the defendant's right to a fair trial and was "offensive to the dignity and good order with which all proceedings in court should be conducted".]

In the following colloquy the prosecutorial misconduct is so grave and fragrant that it requires reversal and retrial.

I) THE PROSECUTOR GAVE AN ARGUMENTATIVE AND PREJUDICIAL OPENING STATEMENT.

The prosecutor's opening statement began:
   Ladies and gentlemen on September 9th, 1999 at
   approximately 9:30pm, at 9559 Fielding Street in
   the City of Detroit an unarmed defenseless child
   was gunned down in the driveway of his own
   home. Indeed, ladies and gentlemen, most sins only
   speak while murder cries out. Murder cries out
   much like Darryl Towns cried out as bullets
   pierced his six foot 141 pound body. The murder of
   Darryl Towns was cold blooded, calculating,
   callous slaying motivated by revenge. So you may
   be asking yourself, revenge for what. What is it
   that young 15 year-old Darryl Towns could have
   done to deserve such a horrible fate.

   Well, testimony will reveal...that Darryl Towns
   did nothing, but what his mother asked of him and
   expected of him. (T, 175-176; 4-4-00).

The prosecutor then assured the jurors that they would,

"hear from some codefendant's...[a]nd you need not
worry about them because they've been dealt with."
(T, 176; 4-4-00)

He further exclaimed to jurors,
"Our Defendant thought he was clever by masking
his face with a bandanna", but "what he didn't
count on was that, that mask would be unveiled by
the very people who he chose to commit this crime
with". (T, 179; 4-4-00)

Prosecution continued before the jurors, stating,
"crimes conceived in Hell don't have angels as
witnesses. And I in no way want to infer to you
that Patrick Roberts, Lynell Drake, Jonathan
Nettles are innocent of anything. But it is very
necessary that we rely on these same people to
unveil that mask. (T, 179; 4-4-00)

The prosecutor told the jurors that these people would tell
how defendant;

"tried to cover up his tracks. How he devised a
plan to say that some crackhead named Buzz saw
them fighting, came over and shot, and they don't
know who he is or where to find him. Ladies and
gentlemen, meet Buzz. (T, 179-180; 4-4-00)

Petitioner states that juror impartiality is an
quintessence of a fair and partial trial and afforded protection
through a non-argumentative opening statement. The "opening"
"must make a full and fair statement of the prosecutor's case
and the facts the prosecutor intends to prove". MCR 6.414(B).

In Testa v Village of Mundelen 89 F3d 443 (1996) the court
held that because of widespread belief that juries typically
make up their minds about a case after the opening statements,
attorneys often find it tempting to convert their statements
into improper opening arguments. The purpose of an opening
statement is to state what evidence will be presented, to make
it easier for the jurors to understand what is to follow, and to
relate parts of the evidence and testimony to the whole. It is
not an occasion for argument. U.S. v Dintz 424 US 600, 612, 96
SCt. 1075, 1082, 47 LEd 2d 267 (1976). An opening statement has
a narrow purpose and scope that should objectively outline the
evidence reasonably expected to be introduced during the trial,
and a prosecutor risks reversal by using an opening statement to

attack a defendant's character improperly Dintz, supra. at 612; U.S. v Johnson 767 F2d 1259, 1275 (CA 8, 1985); see also People v Koharski 177 Mich 194, 196, 142 NW 1097 (1913); U.S. v Small 74 F3d 1276, 1283 (US App DC, 1996); U.S. v Brockington 849 F2d 872, 875 (CA 4, 1988) also held;

> "The prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be produced, and the prosecutor should not use the opening statement as an opportunity 'to poison the jury's mind against the defendant or to recite items of highly questionable evidence'".

In Petitioner's case the opening statement was not an "objective summary" of evidence reasonably expected to be introduced during trial. The prosecutor maliciously chose a vernacular that would incite the passions and prejudices of jurors against Petitioner and any latitude of being innocent before proven guilty. Prosecutors may not make comments calculated to arouse the passion or prejudices of the jury. U.S. v Rodriquez 765 F2d 1546 (1985); U.S. v Peterson 808 F2d 969 (1987); U.S. v Leon-Reyes 177 F3d 816 (1999); Gall v Parker 231 F3d 265 (2000). Where jurors have been prejudiced by a prosecutor's opening statement, reversal is required. People v Wolverton 227 Mich App 72, 574 NW2d 703 (1997); People v Vaughan 128 Mich App 270, 340 NW2d 310, 312 (1983)(where the court held prosecution's improper and repeated appeal to jurors sympathy in opening and closing argument requires reversal despite failure to object). Petitioner recognizes that where prosecutorial argument is unobjected-to, review is for manifest injustice. People v Mack 190 Mich App 7, 19, 475 NW2d 830 (1991), lv den 439 Mich 978, 483 NW2d 618 (1992); People v Grant 445 Mich 535, 553, 520 NW2d 123 (1994). And that on habeas review, this court reviews claims of prosecutorial misconduct deferentially. Darden v Wainwright 477 US 168, 181, 106 Sct 2464, 91 LEd 2d 144 (1986); Bowling v Parker 344 F3d 487 (6th Cir. 2003). To be cognizable, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Hicks v Collins 384 F3d 204

(6th Cir. 2004).

Petitioner states emphatically that before one word of testimony was heard, the jurors' minds were ineradicably prejudiced against his innocence. This was manifest injustice and a denial of due process that requires reversal.

II) THE PROSECUTOR PREJUDICIALLY DISPARAGED THE DEFENSE.

In rebuttal argument the prosecutor admonished the jurors not to succumb to defense "smoke screens" and "curve balls". He continued, "and one of the curve balls that were thrown at you during the trial was that Darryl Towns had a gun" (T, 32; 4-6-00). Defense counsel objected that this was rebuttal argument beyond the scope of the defense closing, and though the trial court agreed, the remarks were not stricken. Instead, the judge asked the prosecutor "kindly restrict yourself to rebutting the defense argument". (T, 32-33; 4-6-00).

The effects of these comments was to disparage the trial lawyer as a slickster, up to the usual "defense lawyer" tricks, trying to manipulate the jurors into acquitting a client who must be guilty, projecting that if not for guilt defense lawyer would not engage in such manipulations.

In <u>People v Dalessandro</u> 165 Mich App 569, 579, 419 NW2d 609, 613-614, lv. 430 Mich 880, 423 NW2d 573 (1988) reversal was required despite lack of objection wherein prosecution repeatedly disparaged defense attorney stating "This is a sham." "...Defense is a sham meant to mislead you." "Its a bunch of lies...". "They're lies." "They're fabrication of evidence". "That's the way this whole thing has been run." <u>People v Kent</u> 152 Mich App 780, 404 NW2d 668 (1987) where the court held express disapproval for prosecutor's suggestions that "defense counsel was trying to mislead the jury with fairy tales", "total misstatement of fact", "misleading statements", and "changing white to black".

> "The prosecutor may not question defense counsel's
> veracity...When the prosecutor argues that the
> defense counsel himself is intentionally trying to
> mislead the jury, he is in effect stating that
> defense counsel does not believe his own

31

> client. This argument undermines the defendant's
> presumption of innocence...Such an argument
> impermissibly shifts the focus from the evidence
> itself to the defense counsel's personality.

The court in Berger v U.S., supra, held that an instance of
prosecutorial misconduct involving both improper
cross-examination of witness and improper argument to the jury
in a prosecution for conspiracy to utter counterfeit notes rose
to the level of prejudicial misconduct because his argument to
the jury was undignified and intemperate. The prosecutor's
argument, just as in Petitioner's case, contained improper
insinuations and assertions calculated to mislead the jury. Id
at 85, SCt. at 632. Because the jury will normally place great
confidence in the faithful execution of the obligations of a
prosecuting attorney wherefore improper insinuations or
suggestions are apt to carry more weight against a defendant
than such statements by witnesses. see U.S. v Spangelet 258 F2d
338, 342 (CA 2, 1958).

The Supreme court in U.S. v Solivan 937 F2d 1146, 1150 (6th
Cir. 1991) held that there are instances where a "single
misstep" on the part of the prosecutor may be so destructive of
the right to a fair trial that reversal is mandated. see Peirce
v U.S. 86 F2d 949 (6th Cir. 1936) and though these instances are
rare, Petitioner's case exemplifies a single "misstep" so
destructive to his right to a fair trial that it constitutes a
reversible error. Specifically in Petitioner's case the
prosecutor misused the authority of his office to overtly shift
the focus from evidence itself to defense counsel's
personality. His argument plainly conveyed to the jurors that
defense counsel was trying to manipulate, confuse, or at best
trick them because he did not believe in his client's innocence
which was further compounded because these improper remarks came
during rebuttal. A time where jurors are even more prone to
prejudice. see Coreas v U.S. 565 A2d 594, 605 (DC App 1989)
where;

> "Improper prosecutorial comments are looked upon
> with special disfavor when they appear in the
> rebuttal because at that point defense counsel has

no opportunity to contest or clarify what the
prosecutor has said".

The argument encouraged the jurors to disregard their duty
to give fair consideration to the case, and less to convict on
less than the constitutionally required standard of proof of
guilt beyond a reasonable doubt. U.S. Const. Amend. XIV. Defense
counsel did not object, but the prejudice from the prosecutor's
comments could not have been erased in any event. "The naive
assumption that prejudicial effects can be overcome by
instructions to the jury *** all practicing lawyers know to be
unmitigated fiction." Krulewitch v U.S. 336 US 440, 453, 69 SCt
716; 93 LEd 790 (1949)(Jackson, J. concurring). Once the
prosecutor planted the seeds of prejudice in the juror's mind,
they were bound to grow. This was plain error which affected
substantial rights, to Petitioner's prejudice. People v Grant
445 Mich 535, 553, 520 NW2d 123 (1994); People v Schuttle 240
Mich App 713, 720, 613 NW2d 370 (2000), citing People v Carines
460 Mich 750, 761-762, 597 NW2d 130 (1999); U.S. v Olano 507 US
725, 732-734, 113 SCt. 1770, 123 LEd 508 (1993). Prejudice is
manifest, and there can be no doubt that Petitioner's trial was
tainted and that this court should reverse.

III) THE PROSECUTOR IMPROPERLY VOUCHED FOR DEFENDANT'S
GUILT AND INJECTED HIS PERSONAL OPINIONS OF GUILT BY
TELLING THE JURY HE WAS LYING, STATING, "I'VE NEVER
SEEN A PERSON WHO COULD  TURN ON AND OFF EMOTION THE
WAY THAT HE COULD."

The prosecutor told the jury Petitioner was lying on the
witness stand, and then stated, "I've never seen a person who
could turn on and off emotion the way that he could." (T, 14;
4-6-00).

The prosecuting attorney in argument to the jury, is
entitled to draw all legitimate inferences from the evidence and
to assert a belief, based on the evidence, that the accused is
guilty, however, a remark indicating the prosecuting attorney's
personal opinion that the accused is guilty may be both a breach
of professional ethics and a legal error warranting a new

trial. Where the prosecutor improperly states an opinion that the accused is guilty, new trial will be granted if it appears that under all the circumstances of the case the statement has prejudiced the Petitioner's case and that the court has not taken corrective actions to avoid prejudice or that corrective action could not avoid it. U.S. v.Mckoy 771 F2d 1207 (1985). The rule that a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of witnesses is firmly established. U.S. v Potter 616 F2d 384, 392 (9th Cir. 1979); U.S. v Davis 564 F2d 840, 866 (9th Cir. 1977). Even if the jury did not understand the prosecutor to refer to his knowledge of facts outside the record, the jury could have construed his statements of opinion as "expert testimony" based on his personal knowledge and his prior experience with other cases. see U.S. v Grunberger 431 F2d 1062, 1068 (2d Cir. 1970). A jury is especially likely to perceive the prosecutor as an "expert" on matters of witness credibility, which he addresses everyday in his role as representative of the state in criminal trials. It may be inclined to give weight to the prosecutor's opinion in assessing the credibility of witnesses, instead of making the independent judgment of credibility to which the defendant is entitled. The prosecutor's characterization of Petitioner in his statement "I've never seen a person who could turn on and off emotions the way that he could" created that risk.

By his words, the prosecutor was encouraging the jury to convict based on the prosecutor's own amateur psychological impressions that Petitioner was an obviously guilty sociopath trying to play on the jurors' emotions. The prosecutor improperly vouched for defendant's guilt and injected his personal opinion of guilt.

In People v Humphreys 24 Mich App 411, 418, 180 NW2d 328 (1970) the court held that these type of remarks were highly prejudicial and improper because they may well have led the jury to suspend its own powers of critical analysis and judgment in deference to the experience and prestige of the prosecutor and

of the police. see <u>U.S. v Roberts</u> 618 F2d 530 (9th Cir. 1980);
<u>Orebo v U.S.</u> 293 F2d 747 (9th Cir. 1961) where prosecutor's
implicit comments were improper, in that, the jury might
conclude that evidence not produced at trial confirms his
opinions.

Vouching in argument is plain error reviewable even without
objection. <u>U.S. v Roberts</u>, supra, at 534. This was plain and
prejudicial error <u>Grant</u>, supra. And reversal is required.

IV) THE PROSECUTOR IMPROPERLY APPEALED TO SYMPATHY.

The prosecutor argued:

> "I think all of us feel for, like Judge Moore
> himself feel for the defendant's mother because
> she had two boys mixed up in this. But ladies and
> gentlemen, I also feel for the victim's mother,
> but you are not to decide this case based on
> sympathy. On the facts alone".

> But see the defendant's mother will see him,
> she'll get to see him she'll get to see both of
> her boys. Mrs. Towns on the other hand, the only
> thing I can give her back is the picture she gave
> me and to ask her to hold on to her memories. (T,
> 20; 4-6-00).

In Petitioner's case the prosecutor injected issues broader
than the guilt or innocence of the accused, and was an improper
attempt to win the case through sympathy for decedent and his
family. <u>People v Farrar</u> 36 Mich 294, 299, 193 NW2d 363 (1971);
<u>People v Dalessandro</u>, supra; <u>U.S. v Deloach</u> 504 F2d 185 (US App
DC, 1974).

The prosecutor cannot engage in improper and repeated
conduct that appeals to the juror's sympathy in its opening and
closing. This violates <u>MRE 609</u> and denies a defendant his
constitutional right to a fair trial. <u>People v Vaughan</u>, supra;
<u>People v Farrar</u>, supra.

The courts have made it painstakingly clear that it will
not condone comments encouraging jury to allow sympathy,
sentiments, or prejudices to influence its decision. <u>Duvall v
Reynolds</u> 139 F3d 768 (10th Cir. 1998) nor will such comments be
used for the purpose of inflaming the jury and diverting it from