his Constitutional right to effective assistance of counsel, and provides substantial evidence that the prosecutor presented evidence that he should have known was false. Therefore, denying Petitioner his constitutional right of due process of law, and right to a fair trial that is safeguarded by both state and federal Constitutionals.

Petitioner also claims that the Newly Discovered Evidence warrants a new trial. A new trial may be granted where the evidence (1) is Newly Discovered , (2) is not merely cumulative, (3) is such as to render a different result probable on retrial, (4) was not discoverable and producible at trial with reasonable diligence.

Petitioner now submits Newly Discovered Evidence in the form of a letter and affidavit from the prosecutor's main witness Patrick Roberts. This information is not merely just an accomplices recanting testimony, but Mr. Roberts gives information that is of paramount importance to the existence of this case. Mr. Roberts exposes a serious miscarriage of justice by the various officers of the Court that was ordained to protect the interest of justice. The prosecutor an defense counsel insufficiently designed this trial to be based on whether Petitioner was at the scene of the crime, and not about whether Petitioner actually committed the murder that he was being tried for. This Newly Discovered Evidence centers more on to commission of the crime, and establishes the impossibility that Petitioner caused the death of Darryl Towns. When defense counsel abandoned Petitioner's alibi defense, counsel had the availability to

present a defense that exposed the insufficiency of the prosecutor's theory, and proved Petitioner's innocence. Instead, defense counsel constantly proved his ineffectiveness by doing nothing to protect Petitioner's right to a fair trial.

Mr. Roberts was given a huge incentive the day of trial for the meritless, uncorroborated, and uninvestigated allegations within his testimony and statement. Mr. Roberts, a juvenile under sever duress at the time he gave his statement. (As quoted in his letter) Implies that Mr. Roberts would have said anything to release the pressure of being under serious duress. Mr. Roberts stated that "everything that he said was not a lie, but at some point the lies became necessary to add in his statement." The Newly Discovered Evidence separates the truth from the lies, while establishing its own validity.

Mr. Roberts was the only accomplice that stated that Petitioner shot Darryl Towns. Accomplice Lynell Drake only stated that he saw Petitioner holding out a gun, but never saw Petitioner shoot Mr. Towns. Accomplice Jonathan Nettles stated that he never saw Petitioner shoot Mr. Towns, but that Petitioner later told Mr. Nettles that he shot Mr. Towns in the leg and stomach. All of the prosecutor's witnesses stated that the shooter had on a mask, and was wearing all black. In Petitioner's testimony he referred to Mr. Drake's statement regarding the description that he gave of the cousin holding out the gun, which had stated that he had on a red jacket, and not all black. When the prosecutor tried to corroborate statements with testimonies, identification became an relevant issue that defense counsel

ineffectively failed to develop. Defense counsel's failure to develop a specific identification of the shooter relieved the prosecutor from having to prove whether Petitioner actually committed the murder of Mr. Towns. Especially when all of the prosecutor's res gestae witnesses stated that there was 5 people that came to commit this crime. Neither prosecutor or defense counsel questioned the accomplices about who the 5th person was. Instead the prosecutor knowingly presented uncorroborated and false testimony in his closing arguments, stating that, "this 5th person may have been a neighbor, we do not know." (T.T. Vol.IV Pg.32 L.11-12)

Prosecution also used the false context of Mr. Nettles testimony to corroborate the allegation of Petitioner shooting Mr. Towns. Mr. Towns did not get shot in the stomach as Mr. Nettles stated that Petitioner later told him. The prosecutor knew that this statement was false, because of the autopsy. Mr. Nettles' statement was allowed to deceive the jury. The fatal shot that caused Mr. Towns demise was through the chest, and not the stomach. By both shots being on opposite sides of each other, and the position of Mr. Towns body when it was allegedly shot. May have caused the jury to conclude that both shots were not from the same gun. The shot to the leg was not the fatal shot that caused Mr. Towns demise. The prosecutor's failure to correct this false statement deprived Petitioner of a lesser charge. Although Jonathan Nettles stated that he did not see Petitioner shoot Darryl Towns. The prosecutor used the statement to corroborate Mr. Roberts' statement that Petitioner

shot Mr. Towns. In complete consideration of Mr. Roberts' and Mr. Nettles' trial testimony neither substantiates Petitioner's first-degree murder conviction.

At trial Mr. Roberts stated "yes" after being asked by the prosecutor did he see Petitioner shoot Mr. Towns. Mr. Nettles' testimony can only be validated because Mr. Towns was shot in the leg though proof never existed on whether the injuries was caused by the same weapon. Wherefore, the prosecutor knowingly allowed the false content of Mr. Nettles' testimony to mislead the jury into falsely convicting Petitioner.

The state's case strongly relied on the belief that Petitioner retrieved a .32 caliber automatic pistol from Arteece Thomas, and used this gun to shoot Mr. Towns, thus being false, the state's case would have not premise.

These allegations are proven to be impossible by <u>Federal Rule 401 and MCL 750.224e(4)(c); MSA 28.421(4)(4)(c)</u> stating that: A semiautomatic firearm is defined by statute as "a firearm employing gas pressure or force of recoil to mechanically eject an empty cartridge from the firearm after a shot, and to load the next cartridge from the magazine, but requiring renewed pressure from the trigger for each successive shot."

There were no .32 automatic shell casings found at the crime scene, Nor did as autopsy reveal any within the deceased body.

Mr. Nettles stated that Petitioner got the gun from the trunk, and it was never theorized that Petitioner possessed any other gun. Joseph Marshall stated that the shooter held

a automatic weapon to his face for about 45 seconds, then turned and shot Mr. Towns three or four times, and everyone took off running.  There was no evidence of shell casings or the retrieving of such by any of the accomplices, or devises to prevent such evidence, which is insurmountable towards a person's guilt.  Yet in Petitioner's case nothing of the such existed.

FRE and MRE 401 in part: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be without the evidence."

The fact that firing a automatic weapon produces empty shell casings is proven inevitable through its mechanics.  The absence of ejected shell casings are "relevant evidence," i.e., without the shell casings the testimonies regarding such that were used as evidence becomes prejudicial to a partial jury for lack of factual substance in Petitioner committing this crime.

Materiality, under Rule 401, is the requirement that the proffered evidence be related to "any fact that is of consequence" to the action.  "In other words, is the fact to be proven truly in issue?" Wade & Storm, Michigan Courtroom Evidence (reved), Rule 401, p71.  A fact that is "of consequence" to the action is a meterial fact.  "Materiality looks to the relation between the propositions for which the evidence is offered to prove the issues in the case.  If the evidence is offered to help prove a propositions which is not a matter in issue, the evidence is immaterial." McCormick, Evidence (5th ed),§185,pg637.

Under "physical fact rule," testimony of a witness which is opposed to the laws of nature, or which is clearly in conflict with principles established by laws of science, is of no probative value. ZOLLMAN v SYMINGTON WAYNE CORP. 438 F2d 28, 31-32; 404 US 827, 92 S Ct. 59, 30 L.Ed 2d 55.(1971)

Mr. Roberts in his letter stated Mr. Marshall went in the house, and when he came back out Roberts started running. Mr. Nettles' testimony also stated that Mr. Marshall went into the house after he told them that he was going to get his gun, and when he returned Mr. Nettles started running. Both defense counsel and prosecutor eliminated facts during trial regarding the possibility that Mr. Marshall in fact retrieved a gun. The absence of relevant evidence as to Petitioner's alleged actions that supported the accomplices and the other prosecutor's witnesses testimony should have elevated the probability that someone other then Petitioner caused the death of Darryl Towns, and that Joseph Marshall probably did retrieve his gun to stop the fight.

Joseph Marshall stated that he never went into the house to get his gun, and was by his cousin's side during the whole occurrence. There is a statement written by Officer Michael Cook that was taken at the crime scene that states " that an unknown black male presented a NPA to Mr. Marshall, and stated to him "you got something to do with this" Mr. Marshall ran to the back yard of the location when he heard shots he observed 5 black males running from location." At no time did any Officer testify as to what occurred, or what was stated at the crime

scene.  The prosecutor knew of this evidence before Mr. Marshall testified.  The acknowledgment of this police report might have revealed that Mr. Marshall went into the house to retrieve his gun, and not the backyard as stated.

The prosecutor in his closing argument during rebuttal, tried to explain the presence of another gun.  Had not the prosecutor presented the false testimonies there would not have been any need to personally justify the presence of another gun.

According to the compelling evidence, the prosecutor had to have known that Darryl Towns was not shot by Petitioner. The prosecutor maintained his silence of the presence of another gun until rebuttal argument so that he could relieve his burden of proving that there was only one gun present during this crime, and that Petitioner actually committed the crime.  This undeniably proves that the prosecutor presented false testimony in order to mislead the jury into convicting Petitioner with evidence that goes contrary to physical facts and law.

Mr. Roberts state in his letter and affidavit that they did drop Petitioner off at home before they committed this crime.  Neither defense counsel or prosecutor established a time schedule that makes it impossible for Petitioner to have been dropped off at home before this crime was committed.  In Ronald Steward's statement and testimony he verified the fact that Petitioner was at home when he stated that "Jonathan and  Lynell was seated in the same position that they were when they left when the car returned to the crime scene."  The accomplices stated that Petitioner was in the front seat when the car returned to

the crime scene suggesting ways to commit this crime, but Mr. Steward having nothing to gain from his testimony stated that Petitioner was not in the front seat when the car returned to the crime scene.

Mr. Roberts also states that the gun Petitioner retrieved from Arteece Thomas was never taken out of the trunk of Mr. Nettles' car. Reasonably explaining the absence of the necessary physical evidence to support the allegations of the prosecutor's theory. To change the prosecutor's theory that Petitioner used Mr. Thomas gun to shoot Mr. Towns would be justification that this case was knowingly insufficient to stand trial, which violates Petitioner's constitutional rights under the 5th, 6th, and 14th amendment. Mr. Nettles and Lynell Drake both stated that Petitioner took the gun from the trunk. The gun which Petitioner received from Mr. Thomas was not proven to be the weapon used in this crime.

Petitioner could not have participated in the crime if the information about his participation is not probable. There is absolutely no evidence except three accomplices that infer that Petitioner committed this crime. Mr. Roberts stated in his affidavit that he, Mr. Nettles, and Mr. Drake conspired to blame Petitioner for the crime for the convenience, and to avoid going to prison. Although an accomplice may be convicted on the uncorroborated testimony of an accomplice, in this case the accomplices testimony contradicts physical realities, and the gravity of physical evidence.

This case was clearly a credibility contest. Defense

counsel never presented evidence that would refute the allegations that Petitioner caused the death of Mr. Towns.   Prosecution presented testimony as evidence that he had to have known defies physical realities, contradicts other res gestae witnesses, and was false when he inserted his own opinion.   Wherefore defense counsel was clearly ineffective which denied Petitioner a fair and partial trial, coupled with the prosecutions denial of due process by knowingly presenting to the jury evidence that is false.

Petitioner claims that a new trial should be granted, because the evidence (1) is Newly Discovered, (2) is not merely cumulative, (3) is such as to render a different result probable on retrial, (4) was not discoverable and producible at trial with reasonable diligence.

1.   The evidence itself is Newly Discovered.   In this case, Patrick Roberts testified at trial that Petitioner shot Darryl Towns.   Until Mr. Roberts confessed to wrongfully implicating Petitioner as the shooter, there was no Newly Discovered Evidence to discover.   The substance of this evidence reveals Petitioner's Innocence, and it is inconceivable that it would not have been used if it had been timely discovered.

2.   This evidence is not merely cumulative.   The admition of Mr. Roberts' perjury and enlightening information was not in evidence at trial.   At a new trial, the prosecutor would be deprived of Mr. Roberts' critically important testimony regarding any involvement by Petitioner, and him shooting Mr. Towns.   Indeed, under Michigan Law, where the prosecution knows

the witness will disavow knowledge of who committed the crime, the witness cannot be called for the prosecution for the purpose of presenting their prior statement into evidence. PEOPLE V CRAWFORD, 147 MA 244 (1986); PEOPLE V STANAWAY, 446 M 643, 639 (1994); see also PEOPLE V WHITE, 401 M 482, 509-510 (1977):

> "We do not approve of the practice of the people in a criminal case calling a witness they are under no duty to call, and who they have reason to know will deny all knowledge of the event and thereby add nothing of substance to the people's case, for the sole purpose of placing before the jury highly damaging evidence that the jury must be instructed may be considered only for impeachment purposes. Cf., PEOPLE V GIACALONE, 399 M 642, 250 NW2d 492 (1977). We seriously doubt the effectiveness of the limiting instruction in such a case. Cf., BRUTON V UNITED STATES, 391 US 123, 88 S Ct 1620, 20 L Ed 2d 476 (1968).

Petitioner testified that he is innocent, the accomplices and the other prosecutor's witnesses testimony goes well beyond mere corroboration. The right to corroborate one's own statement with the testimony of other witnesses is an essential component of due process of law. PEOPLE V STALLWORTH, 364 M 528, 536 (1961); US CONST, AMEND XIV. As a matter of law, corroboration of the Petitioner's statement cannot be considered cumulative, because triers of fact tend to discount a defendant's own testimony as self-serving. BENNET V SCROGGY, 793 F2d 772, 776 (CA 6, 1986).

However, in this instance, Mr. Roberts has information that was outside the personal knowledge of Petitioner, and his proffered testimony therefore cannot reasonably be cumulative.

3. This Newly Discovered Evidence is such as to render different result probable on retrial. Without Mr. Roberts testimony, and with the acknowledgment of the new information that he has given, the prosecutor's case would completely fail. The Court of Appeals erroneously interpreted the facts and the elements of first-degree murder. The Court of Appeals decision emulates the probability that Petitioner did not commit the murder by only inferring the possibility of the Petitioner being involved, and not the actual perpetrator of the murder. The Court of Appeals unconstitutionally deprived Petitioner of justice and liberty by refuting all of the elements of first-degree murder to render a decision contrary to law on the allegations of involvement, and not the actual commitment of the crime. The Court of Appeals decision proves that this newly discovered evidence would render a different result on retrial by their own insufficient findings of only being involved, and not of committing the actual murder that is necessary to conclude that this newly discovered evidence would not produce a different result.

The Court of Appeals decision stated, "given that several other witnesses identified Petitioner as being _involved_ in the offense, it is not probable that the alleged newly discovered evidence would produce a different result on retrial." _CJI2d 16.1_ states that the elements of First-degree Premeditated Murder is: 1) that the defendant caused the death of deceased, that is, that deceased died as a result of, in this case, multiple gun shot wounds.  2) that the defendant intended to

96

kill deceased.  3)  that this intent to kill was premeditated,
that is, thought out beforehand.  4)  that the killing was
deliberate, ect..  5)  that the killing was not justified,
excused, or done under circumstances that reduced it to a lesser
crime. Based on all 5 elements of First-degree murder elements,
none of them implies that a jury may convict on this charge
if they conclude that the accused was underlined(involved) in the murder,
The Court of Appeals decision defiles its own laws that governs
First-degree murder.  Petitioner is not convicted of being
underlined(involved) with a First-degree murder, Petitioner is convicted
of committing First-degree murder.

The Court of Appeals stated that "other witnesses
identified Petitioner as being involved in the offense." The
identification was an issue that defense counsel ineffectively
failed to develop. On a retrial accomplice Lynell Drake who
the prosecutor expressly relied on to reveal who was behind
the mask will refute the detailed description of the other
prosecutor's witness who stated that they saw the alleged shooter
in all black, and Mr. Drake described the alleged shooter as
having on a red jacket.

It is premised that the alleged shooter wore a mask
and when Lynell Drake gave a different description than the
other witnesses regarding the cousin that was suppose to have
been the alleged shooter, it eliminated the possibility of
circumstantial evidence that the prosecutor relied on to identify

who was wearing the mask. Therefore, identification is not certain as stated by the Court of Appeals decision, nor can it be inferred by circumstantial evidence. On a retrial it is highly probable facts will produce a different result with effective assistance of counsel.

This case was considered to be a credibility contest. The specific details are very critical, because the main witnesses were given huge incentives to lie on Petitioner. Given a retrial Petitioner may be assured effective assistance of counsel, absence the presence of any and all false and/or fabricated evidence.

Due to the Newly Discovered Evidence, on a retrial Petitioner shall enjoy the privilege of corroborating his testimony with the available alibi witness Latoya Smith, whom Mr. Roberts; through his letters, verifies was there with Petitioner when he returned from assisting in this crime, and that defense counsel ineffectively failed to present. Petitioner will also present on retrial the various officers that examined the crime scene, and found no evident that supports the prosecutor's theory. The res gesta witness that were not called to support the 5th person not being a neighbor or someone just passing by as the prosecutor falsely stated, will also be called to testify. The officer that took Joseph Marshall's statement at the crime scene will verify Mr. Marshall's statement about him running to the back yard, when he stated that having stayed

and witnessed this crime. Considering that the accomplices ran before shots were fired, and Mr. Marshall ran before shots were fired, no one actually witnessed the perpetrator of this crime. The lack of evidence clearly exonerates Petitioner, and will more then likely produce a different result on retrial.

The Gun prosecution premised this case on was never produced or one the like of proven to have been fired at the crime scene. The probability of Mr. Roberts affidavit being true is more probable then not. Petitioner never seen or knew deceased and had absolutely no motive to commit this crime. Petitioner did not tell the accomplices to take him home because he was not going to go and kill anybody with them, Petitioner and Lynell Drake stated that Petitioner was not going to go and fight with the accomplices. There was never any intent, motive, or indication from Petitioner to cause Mr. Towns any harm. Though Petitioner did state that he thought that Mr. towns beating up Mr. Nettles was funny.

The Newly Discovered evidence confirms that Petitioner was dropped off at home before the accomplices went to commit this crime. Again, Petitioner did not know Darryl Towns and had no reason to assault, moreover, murder this man. Police reports and testimony explain what occurred earlier that day, and what culminated into this tragic situation. It is stated in newly discovered evidence that once Mr. Nettles dropped petitioner off at home, he located two of his friends that were willing to assist in his scene of revenge, a truth which was

not fully explored due to manipulating plea bargains and false or fabricated evidence.

There is no physical evidence or any other evidence that corroborates any of the testimonies given at trial that places Petitioner at the crime scene, except the accomplices who had a great deal to gain by indicating Petitioner as the perpetrator. Untill Mr. Lynell Drake was given a plea agreement, he was in the mist of getting his statement suppressed due to a claim of Violation of MCLA 764.27; MSA 28.888; MCLA 600.606; MSA 27A.606, Miranda Violation-Ineffective Waiver, Voluntariness of Statement, and Fruit of the Poisonous Tree, ect.. The statement was given under various legal violations. At a retrial the jury will be exposed to this information, along with the full understanding of what the accomplices were facing as well what they received for their plea agreements and why Petitioner will also have the privilege of having the Undisputed Accomplice instruction read so that the jury may properly consider the accomplices credibility.

Based on the Newly Discovered Evidence and the elements that govern first-degree murder, and considering the testimonies given at the trial this case will not only more then likely produce a different result on retrial, but this case will need to be re-evaluated for the sufficiency of evidence to proceed with a retrial. Mr. Drakes' and Mr. Nettles' testimony is not sufficient to convict Petitioner of First-degree murder. Neither

one ever saw who shot Darryl Towns. Mr. Nettles testimony stated that Petitioner told him that he shot Mr. Towns in the leg and stomach. Mr. Towns was not shot in the stomach, and the fatal shot that caused his death was not in the leg. Moreover the fatal shot to the chest is not proven to be from the same weapon as the shot to the leg. The lack of the necessary physical evidence refutes all the allegations according to the prosecutor's theory that petitioner shot Darryl Towns with a semi automatic gun. Joseph Marshall, if believed, testified that he stayed and witnessed the whole crime, though this testimony is refuted by the accomplices who stated that he went into the house, and the police report taken by the officer Cook that states he ran in the back yard. This evidence is the bane of this case, and in it's entirety this evidence is not sufficient to convict Petitioner of First-degree murder.

4) Is whether Petitioner could have with reasonable diligence discovered the Newly Discovered Evidence. In this case, Patrick Roberts testified at trial that Petitioner shot Darryl Towns. Untill Mr. Roberts confessed to lying, there was no newly Discovered Evidence to discover. Even after this crime occurred, and Mr.Roberts stated that he did not want to talk about it. (As stated in his letter)

Only with a record to confirm the Newly Discovered Evidence can this Court have a factual basis on which to determine whether the evidence presented in the letter and affidavit is of sufficient weight to overturn this conviction.

A Petitioner has no right to commit perjury. JERKINS V ANDERSON, 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980). If a Petitioner lies, the prosecutor can introduce evidence, otherwise excluded, to contradict him. HARRIS V NEW YORK, 401 US 222; 91 S Ct 643; 28 L Ed 1 (1971). Petitioner submits these rules prohibiting perjury, and inserts these perjury rules must apply to witnesses as well. Where as here, there is significant evidence that a witness lied about the various issues that solidified petitioner's conviction. This evidence cannot be ignored without violation Petitioner's constitutional rights.

Petitioner has been wrongfully convicted by perjured testimony. It is simply intolerable in our view that under these circumstances due process will be violated if a state allows an innocent person to remain incarcerated on the basis of lies. A states failure to act to cure a conviction founded on a credible recantation by an important and principal witness, exhibits sufficient state action to constitute a due process violation. DURLEY V MAYO, 351 US 277, 290-91 76 S.Ct 806, 813-14, 100 L.Ed. 1178 (1956). At trial the prosecutor's main concern was asking Patrick Roberts did Petitioner shoot Darryl Towns, and he answered yes. Petitioner establishes that Mr. Roberts' testimony is perjured by the inevitability of the evidence to prove that Petitioner shot Mr. Towns, or even present at the incident. Petitioner has provided sound proof of his innocence thoughout this Newly Discovered Evidence issue. Most of the

information that Mr. Roberts provides was never inquired into by the prosecutor, and for this failure an innocent person is incarcerated.

Although recanted testimony is usually regarded as unreliable. In this case the initial statement that Mr. Roberts made should have been regarded as unreliable. There was never a foundation of facts in which to formulate this case on. This case surpassed a credibility contest when the Judge refused to read the proper Accomplice Instruction, and insured the accomplices credibility with the Undisputed Accomplice Instruction. Mr. Roberts may have recanted his knowledge of who the shooter was, and did assist in this crime, and by not blaming somebody for shooting would not have been benefited him any. Mr. Nettles and Mr. Drake inferred that they did not see Petitioner shoot Mr. Towns, but since they had to blame somebody Mr. Nettles lied and stated that Petitioner told him that he shot Darryl Towns. This case clearly violates Petitioner's due process. From the lack of necessary evidence the prosecutor should have known that Mr. Roberts testimony was perjured. "The fundamental conception of justice which lie at the base of our civil and political institution" must with equal abhorrence condem as a travesty a conviction upon perjured testimony if later, but fortunately not to late, its falseness is discovered. JONES V KENTUCKY, 97 F2nd 335 (6th Cir. 1983).

To prevail on a claim that Petitioner's conviction

was obtained with use of evidence that the Prosecutor knew or should have known was false, Petitioner must show 1) that statements were actually false, 2) that statements were material, and 3) that prosecution knew they were false. U.S. V FARLEY, 2 F3d 645, 114 S Ct 649, 510 US 1030, 126 L.Ed 2d 607. US V LOCHMONDY, 890 F2d 817.

Petitioner has presented strong evidence thoughout this Newly Discovered Evidence issue that proves that the prosecutor knew or should have known that Petitioner's conviction was obtained with the use of false evidence. The testimony that the prosecutor gave out side of any evidence without support proves that he knowingly presented false testimony by witnesses and by himself. This Newly Discovered Evidence is material, whereas it pertains to the very root of this case. It is difficult to not infer that if one juror had known about the information herein, there probably would have been an acquittal.

Petitioner prays that this Court will grant an Evidentiary Hearing to prove the validity of this Newly Discovered Evidence, grant a retrial, or give any relief that this Court deems necessary.

## ARGUMENT VII

### REQUEST FOR CERTIFICATE OF APPEALABILITY FOR RULE 60(b)(1) Motion

Petitioner was denied habeas relief by the acceptance of the Magistrate's Report and Recommendation stating that Petitioner failed to object. Petitioner filed a Rule 60(b)(1) Motion for Relief from Judgment, and was denied, but this Court acknowledge that a mistakes was made on their behalf by failing to note Petitioner's objections.

The failure to object to a fact finding, legal conclusion, recommendation, or other portions of the Magistrate Judge's report forgoes the Petitioner's otherwise unqualified right to insist upon a "de novo determination" of that aspect of the report. 28 U.S.C. §636(b)(1) (2000); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts (2005).

By objecting to an aspect of the Magistrate Judge's report, a party obliges the district Judge (1) to review that aspect of the report "de novo", whether or not it is a factual or legal matter; Thomas v. Arn, 474 U.S. 140, 150(1985) (2) to substitute the district Judge's judgment for that of the Magistrate Judge on the matter, hence to reject, or modify, in whole or in part any finding, reasoning, or recommendation with which the district Judge disagrees; 28 U.S.C. §636(b)(1)(2000); Rule 8(b), and (3) to consider the need to receive further evidence or recommit the matter to the Magistrate with instructions.

Due to the Court's mistake regarding the failure to acknowledge Petitioner's objection, denied him a decision on his Motion for Evidentuary Hearing, Motion to Compel Rule 5 Material, and "de novo" review of his petition.

If no objection is made, the district Judge has the all but unreviewable discretion to enter the Magistrate Judge's recommendation as a final judgment, "With or Without Reading it." Thomas v. Arn, supra, 474 U.S. at 151 (practice of Judge Metzner, then chairman of Judicial Conference Committee on administration of magistrate judge system, who informed congressional committee that he "merely sign[s] the magistrate's order" if no party objects to it).

Petitioner is convicted of felony firearm and first degree murder, and is serving 2 years for felony firearm and the rest of his natural life for first degree murder. Petitioner has six claims of constitutional violations in which he is illegally being detained. Petitioner has proven that he was convicted of perjured testimony, that a "manifest injustice has been committed," and that he is "actually innocent." This Court has mistakenly ignored Petitioners objections to the Magistrate's Report and Recommendation, and allows Petitioner to remain illegally detained in violation of his constitutional rights.

Once Petitioner objections to the Magistrate Judge's report with regard to dispositive matters have been filed, the district Judge must determine those matters "de novo." The district Court's failure to conduct "de novo" review of objected to portions of magistrate Judge's report and recommendation requires reversal and remand. Flournoy v. Marshall, 842 F.2d 875, 875-76 (6th Cir.1988); James v. Brigano, 201 FS.2d 810 (2002 6th Cir.); Swingle v. Money, 215 FS.2d 919,921 (2002 6th Cir.); Harris v. Physicians Mut. Ins. Co., 240 FS.2d 715 (6th Cir. 2003) De novo review as of right applies to all factual and legal matters to which objection is made. "De novo" review requires the district Judge to substitute their judgment for that of the Magistrate Judge on all objected to matters. Petitioner never

received an opinion from the Judge as to his judgment on why Petitioner's Motions should not be granted, or as to any of Petitioner's objected to constitutional claims.

Petitioner record is incomplete, therefore a "de novo" judgment would have revealed that. This is Petitioner's last chance to appeal his constitutional claims. The denial of a Certificate of Appealability on Petitioner Damon L. Smith Rule 60(b)(1) Motion For Relief From Judgment would preclude appellate review by the United States Court of Appeals. The requirement of a Certificate of Appealability is designed to bar frivolous appeals, not to preclude appellate review of cases involving substantial issues. See Moore's Federal Practice (2d ed) §222.03. Since the Rule 60(b)(1) Motion for Relief from Judgment claim presented in this case is substantial, a Certificate of Appealability should be issued.

<u>RELIEF REQUESTED</u>

For these reasons stated in Arguments I-VII, Petitioner Damon L. Smith asks that this Court issue a Certificate of Appealability for all of the Constitutional claims presented in his petition.

Respectfully submitted,

By: _Damon L. Smith_

Damon L. Smith  #311644
In Pro Se
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI  48623

February 17, 2006

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

## AFFIDAVIT

I, Damon L. Smith, being sworn, state that the following is the truth.

1) That during preliminary examination defense counsel Stephen Taratuta begin destroying the Attorney/Client relationship when Mr. Taratuta sat silently and allowed Mr. Smith to partake in a prejudiced in Court identification, and the alleged shooter had on a mask that covered his face making it impossible to identify.

2) That Mr. Taratuta allowed the corrupted identification into evidence so that Mr. Smith may be bonded over to stand trial.

3) That during preliminary examination Mr. Taratuta refused to request that Mr. Smith's name be redacted from the reading as defense counsel Ms. Sager requested for her client Lynell Drake. Mr. Taratuta's failure to request that Mr. Smith's name be redacted from Patrick Roberts' statement resulted in a full front page article of the Detroit News Sport section with Mr. Smith whole name printed. Which falsely stated that Mr. Smith committed the murder of Darryl Towns.

4) That on October 29, 1999 at the arraignment before Judge Warfield Moore Jr., Mr. Smith expressed his dissatisfaction with Mr. Taratuta to Judge Moore, and his concerns about Mr. Taratuta not coming to visit him. Mr. Smith also expressed his desire to replace counsel Taratuta, but he was consoled and insured by Judge Moore that counsel Taratuta was a very fine Lawyer. Then Judge Moore instructed Mr. Taratuta to go and visit Mr. Smith, or he will be forced to fire him.

5) That Mr. Taratuta strongly revealed his unwillingness to adequately represent Mr. Smith 3 days before trial was to begin. Counsel told Mr. Smith that Lynell Drake and Jonathan Nettles had signed plea agreements to testify against

Mr. Smith.   When Mr. Smith asked Mr. Taratuta what it is that they are going to testify to Mr. Taratuta was clueless, and made a reference to their statements.   In Mr. Drake's statement he never mentioned Mr. Smith's name, or stated that he saw who shot Darryl Towns.   Mr. Nettles statement never mention Mr. Smith at all.

6)   That when Mr. Smith requested for Mr. Taratuta to find out what Mr. Drake and Mr. Nettles were going to testify to in order to prepare for trial 3 days away, Mr. Taratuta showed no concern or determination to prepare for trial.

7)   That on March 13, 2000, less then 3 weeks before trial Mr. Smith was assigned a investigator named Michael P. Martin.

8)   That Mr. Smith supplied Mr. Martin with a list of witnesses names, numbers, and their relevance to Mr. Smith's case.

The list was as followed:

A)   Damus Taylor who was intended to testify as one of Mr. Smith's alibi witnesses, but after an investigation could only account to the time of being at home after the crime happened.

B)   Larry Austin who was intended to testify as one of Mr. Smith's alibi witnesses, but after investigation he could only account to the time of Mr. Smith's presence home after the crime happened.

C)   Destini Smith was intended to testify as an alibi witness, but she stated that she was down stairs sleep, and Mr. Smith was up stairs during the time the crime happened.

D)   Latoya Smith was suppose to testify as an alibi witness, but was never interviewed or investigated.   Latoya and Mr. Smith was upstairs watching the MTV Music Awards together during the time this crime occurred.

E)   Charles Kendront who was intended to testify that on September 10, 1999.   Mr. Smith was present at work at Nu-Nu Unisex Salon cutting hair as he has done everyday.

F)   Domonique Tobias was intended to testify at trial

to the fact that she and Mr. Smith had plans for the evening, and was going to get together the evening of Sept. 9, 1999. Ms. Tobias is the reason that Mr. Smith needed to get home, and the main reason why Mr. Smith got dropped off at home before the crime occurred.

9)   That investigator Martin contacted all of Mr. Smith's witnesses, except LaToya Smith, and was able to verified all the information that Mr. Smith gave to him.

10)   That investigator Martin and Mr. Smith tried working and planning a acquitting defense with Mr. Taratuta, but they both were unsuccessful in every attempt.

11)   That on the day of trial Patrick Roberts signed a plea agreement to testify against Mr. Smith.  Once again Mr. Smith asked Mr. Taratuta what was the testimony going to state, and Mr. Taratuta appeared clueless and unconcern.

12)   That on the day of trial Mr. Taratuta on his own inclination proceeded to conduct a hearing to obtain a psychological evaluation for Mr. Smith.  After Mr. Taratuta revealed his belief that Mr. Smith was guilty through such a request, and the diligence of his pursuit to try to elicit mental deficiencies from Mr. Smith's mother.  Mr. Taratuta turned and asked Mr. Smith did he want to proceed with trying to obtain the psychological evaluation, Mr. Smith quickly stated no, and then proceeded to fire Mr. Taratuta.

13)   That Mr. Taratuta then stood and asked to be withdrawn, but was made to proceed by Judge Moore.

14)   That Mr. Taratuta stood in front of the jury and held up the front page of the Sport section where Mr. Smith whole name was printed, and already had him guilty of the crime and stated to the jury:  "On December 24, Christmas Eve, did any of you (jury) read the front page of the Sport section."  Judge Moore had to stop Mr. Taratuta, because he was about to completely elaborate on the content of that article.

15)   That after Mr. Taratuta revealed the article in the News Paper, there was nothing done or said to stop any of the jurors from going to read that News Paper.

16)   That on the day of trial Mr. Taratuta told Mr. Smith that he needed to sign off on the alibi defense so that the prosecutor can not bring the topic up to seem as though Mr. Smith was lying about his alibi defense.

17) That Mr. Taratuta stated that Mr. Smith was only signing off on Damus Taylor and Larry Austin, and not LaToya Smith.  Mr. Taratuta insured Mr. Smith that LaToya Smith was going to testify at trial along with Domonique Tobias and Charles Kendront.

18)   That during trial Mr Taratuta and Mr. Smith started arguing because Mr. Taratuta started dismissing witnesses with valuable testimony that may have changed the out come of the trial.

19)   That Mr. Taratuta sat silent and let Mr. Smith read bits and pieces of a letter that he wrote, and was not allow to read the whole letter.  The few lines that Mr. Smith did read was taken out of content, and when he told Mr. Taratuta he tried to obtain the whole letter, but it was snatched away by the prosecutor, and Mr. Taratuta never objected or asked that the letter be submitted into evidence so that the jury may have read the entire letter.

20)   that during sentencing Mr. Smith stated his dissatisfaction with the representation that he received during trial.  Mr. Smith even wrote a letter to Judge Karen Fort Hood stating his dissatisfaction with Mr. Taratuta, and the fact that Mr. Smith did not receive a fair Trial.

21)   That Judge Moore Acknowledged the letter and told Mr. Smith to take it up on appeal, but allowed Mr. Taratuta to remain as his Lawyer knowing the full extent of Mr. Smith's complaints through the letter to Judge Hood. (Attached as Ex. A).

22)   That upon request for a new trial, Mr. Taratuta just stood by silently as Mr. Smith tried to obtain Justice, and correct the problem that Mr. Taratuta had done.

**MR. SMITH STATES THAT ALL OF THE ABOVE IS TRUE**

**AND HIS SIGNATURE BELOW VERIFIES IT.**

*(signature)*

DAMON L. SMITH

Subscribed and sworn before me, this 12th
day of July, 05, a Notary Public
in and for Saginaw County,
State of Michigan

*(signature)* Erwin Duane Bell
(Signature)
NOTARY PUBLIC

My Commission expires Sept 30, 06
Acting in Saginaw Co.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMON L. SMITH
        Petitioner,

VS.


BLAINE LAFLER,
        Respondent.
_____/

Case No. 04-CV-74233-DT
HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE
HONORABLE VIRAINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE


Damon L. Smith 311644
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

Michael A Cox
Attorney General
Raina Korbakis (P49467)
Assistant Attorney General
Attorney for Respondent
Criminal Appellate Division
P.O. Box 30217
Lansing, MI 48909
(517) 373-4875


## MOTION FOR EVIDENTIARY HEARING

PETITIONER DAMON L. SMITH, Pro Per, request this Court grant an Evidentiary Hearing in support of his Petition for Writ of Habeas Corpus, and respectfully states as follows:

1. Petitioner filed his Petition for Writ of Habeas Corpus in this Court before October 31, 2004.

2. The Petition raises the following issues claiming that the State Court violated Petitioner's Constitutional Rights:

I. PETITIONER WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE COURT REFUSED TO ADJOURN AND GRANT REPLACEMENT COUNSEL, AND FORCED PETITIONER TO GO TO TRIAL WITH UNPREPARED COUNSEL.

   II.  PROSECUTORIAL  MISCONDUCT  DENIED  A  FAIR  TRIAL  AND
REQUIRES REVERSAL.

   III. INEFFECTIVE ASSISTANCE DENIED A FAIR TRIAL.

   IV. ERRONEOUS INSTRUCTION REQUIRED REVERSAL.

   V. CUMULATIVE ERRORS REQUIRED REVERSAL.

   VI. NEWLY DISCOVERED EVIDENCE REQUIRED REVERSAL.


   3. The Respondent was ordered to respond to Petition and
eventually filed a response with this Court by May 1,2005.

   4. Petitioner now makes effort to file a memorandum of
law to support his petition for Writ of Habeas Corpus, stating
that the accompanying Motion for Evidentary Hearing is necessary
to develop the factual record of the above listed issues: I-III
A-D, IV-VI.

   5. Petitioner is a state prisoner bringing this Habeas
Corpus action after the enactment of the Anti-Terrorism and
Effective Death Penalty Act, of 1996 pursuant to 28 USC § 2254.

   6. Petitioner's request to develop the facts of the before
listed claims, is governed by the AEDPA, 28 USC § 2254 (e)(2),
which bans the granting of evidentiary hearings of claims that
an applicant has failed to develop. Petitioner asserts that the
AEDPA prohibition is inapplicable to his claims, due to the
Supreme Court ruling of Williams v. Taylor, 529 US 362, 432,435
(2000). Pertinent to the interpretive language that the Williams
decisions set forth, as to what constitutes 'failure to develop,'
the Court determined, 'failure to develop' means that a Petitioner
has lacked due diligence in obtaining an evidentiary hearing
in State Court to develop the material facts of his claim.

7. Petitioner has not failed to develop his factual claims in State Court from any lack of due diligence.

Petitioner sought to develop the facts of his potential appellate claim, with his original appellate counsel, Daniel Rust. At his initial consultation and record discussion, Petitioner stressed on the condition of his trial representation, and that in his view trial counsel had not represented him sufficiently. He stated clearly his desire to pursue relief under various 6th Amendment claims, and requested a Motion for a <u>Ginther</u> hearing be made.

Petitioner pointed out to Appellate Counsel a letter which he had recently received from co-defendant Patrick Roberts, expressing that he had rendered false testimony during trial, and attempting to express why he had implicated Petitioner in the shooting of Darryl Towns, when in fact he had not been present. Petitioner expressed to appellate counsel the need to pursue this newly discovered evidence by way obtaining a sworn affidavit from Mr. Roberts and making a request for an evidentiary hearing to further develop the facts of his claim.

Petitioner further expressed to Appellate Counsel his attempts to remove his trial counsel for his less than apt representation and the manner in which his efforts were undermined by the trial court through disparaging comments, a refusal to investigate petitioner's claims, and a reliance on trial counsel to divulge his own ineffectiveness rather than a proper inquiry being performed by the trial court. Petitioner expressed he wanted an evidentiary hearing for this matter to establish for the

2

record, his reasonings for requesting a substitute counsel, and why this denial damaged the outcome of his trial.

Once expressed, Petitioner had no reason to believe that Appellate Counsel would ignore his demands for appellate review, but this is exactly what transpired, resulting in appellate counsel submitting a substandard (3) issue brief, raising only one of the claims Petitioner expressly detailed during his consultation, thus being his substitution of counsel claim, which was insufficiently raised, and absent any request for an evidentiary hearing, opting only to void the claim with the Court of Appeals for initial review.

Petitioner after receiving the brief filed by Appellate Counsel, took immediate steps to address his ignored claim as well as filing a judiciary complaint and a complaint with the Attorney Grievance Commission against appellate counsel Rust, all of which resulted in Mr. Rust's removal from Petitioner's appeal and being replaced by counsel Linda Ashford. (complaint/grievence include as exhibit)

Petitioner immediately filed for withdrawal of Appellate Brief on March 5, 2002. Having this request withdrawn by Ms. Ashford. She then proceeded to salvage Petitioner's appeal the best she could by supplementing the original brief with 11 additional potential appellate claims. Making a timely request for a Motion to Remand pursuant to MCR 7.211(c). Attorney Ashford also helped facilitate an Affidavit from co-defendant Patrick Roberts to further develop Petitioner's newly discovered evidence claim.

Although Petitioner's Motion to remand raised several potential appellate claims, all of which had direct affect on the outcome of trial, the Court of Appeals rejected Petitioner's Motion to Remand, based on the precedence of <u>People v. Garn</u>, 414 M 859, 322 NW2d 174 (1982), also <u>People v. Bouden</u>, 393 M 253, 227 NW2d 213 (1974).

Where Petitioner raised valid claims, both <u>Garn</u> and <u>Bouden</u> held application and Remand should have been granted.

The Court of Appeals however, rejected Petitioner's 6th Amendment Counsel claims after denying his Motion to Remand for not having obtained a <u>Ginther</u> hearing to establish a factual record, thereby limiting review to the record.

After the Court of Appeals rejected Petitioner's claims he sought review from the State Supreme Court raising all issues that were raised in his Court of Appeals Brief, and also attempting to address the position taken by the Court of Appeals on rejecting his efforts to secure an evidentiary hearing, then rejecting his claims for having not secured an evidentiary hearing.

In light of the procedural history, Petitioner respectfully submit that he has in no way, lacked due diligence in pursuing to develop the factual basis of his appellate claims, and therefore request this Court, in its judicial authority, view the AEDPA ban of evidentiary hearings to be inapplicable in this present case.

8. Petitioner seeks to develop the record to support his newly discovered claim.

4

Petitioner is faced with an insurmountable hurdle to show the relevance of the recantation statements made by testifying co-defendant Patrick Roberts in a private letter written to Petitioner shortly after his conviction, as well as a subsequent sworn affidavit by Mr. Roberts that further recants the testimony he gave at Petitioner's trial.

Given the suspicion that Appeal Courts view recantation statements, more so when they involve as this case family members. It is on necessary that Petitioner be allowed the opportunity to put Mr. Roberts under the scrutiny of cross-examine to allow the validity of Mr. Roberts statements to establish their own judicial relevance.

More than a fleeting relevance exists when Mr. Roberts Newly Discovered statements are viewed in there totally to the trial in which Petitioner Smith was convicted at.

Petitioner being aware that the presumption of innocence is no longer attached. Petitioner presents this issue with reference to the evidence submitted to convict him at his trial, and respectfully asserts the fact that his conviction was obtained wholly and solely through co-defendant's false testimony.

An evidentiary hearing is necessary to show forth that the remaining co-defendants who testified can not be deemed to automatically cancel out Mr. Roberts recantation evidence where key facts have been addressed and completely overshadowed the remaining co-defendant's testimony.

Mr. Roberts in his letter to Petitioner states that Petitioner was pulled into the shooting of Darryl Towns, out

of fear posed by the individuals who actually were at the scene of Darryl Towns shooting.

Mr. Roberts has expressed that the actual participants, two individuals still unnamed threatened his and his family lives. Mr. Roberts really believed that these threats would be made good on if he didn't fabricate the facts of what actually took place the night Darryl Towns was killed.

The other co-defendants must have met the same ultimatum of keeping silent as to the involvement of the two unknown men, or pay with there life. A threat presumed to be taken as truth given the death of Mr. Towns.

The two unknown men are not merely apparitions. A closer review of the record will reveal that several people made "on scene" statements to the police that they saw a total of five men coming to assist Mr. Nettles in getting revenge.

Mr. Roberts recantation testimony must be scrutinized in junction with the many errors Petitioner alleges occurred during his trial. Had they not occurred the testimony very likely would have been unmasked at trial, rather than after.

Where as this case stands unique from many, in that the person convicted of the shooting death of Darryl Towns, had neither motive, nor any physical evidence that linked him to Mr. Towns death and the voice of one co-defendant courageous enough to speak out should not be silenced merely because his two peers have not found such courage themselves.

9. Petitioner seeks an evidentiary hearing to properly address his 6th Amendment claims that counsel was not effective.

6

Without a record Petitioner can never hope to fully explore his claims of Constitutional violations.

Trial counsel Taratuta never made a thorough investigation on behalf of Petitioner's defense to the charge of First Degree Murder. Petitioner can never establish this presumption absent an opportunity to cross-examine counsel Taratuta, as to his trial attorney.

Petitioner received no pre-trial consultation keeping him abreast as to the direction or status of his defense, therefore it is mandatory requirement attorney Taratuta be provided the change to explain why the alibi defense which Petitioner presented at the very onset of representation was not pursued.

It is necessary for counsel Taratuta to explain why he attempted to put on a defense of mental incompetence without first consulting with Petitioner or motioning the court for forensic evaluation.

It was this and other previous deficiencies that caused Petitioner to seek substitution of counsel.

Counsel must be allowed to explain why he failed to interview alibi witness Latoya Smith, and instead misadvised Petitioner that his alibi defense was not presentable and that it had to be withdrawn or it would negatively affect the outcome of trial.

Trial counsel must further be cross-examined to explain whether it was a method of trial strategy to waive the endorsed witnesses of police officers as well as the witness Odetah Boathwright, where there is exculpatory evidence within their

7

testimony that would have supported Petitioner's alibi defense when he provided trial counsel with the name of witness Latoya Smith, and the truth of his whereabouts during the time of the shooting.

Odetha Boatwright witnessed the shooting of Darryl Towns, and gave a statement to the police at the scene and stated that she observed five men standing across the street from the Towns residents who then proceeded to cross the street and engage in a fight with the deceased. Her testimony would have affected the outcome of the trial, in that it not only proved the existence of other perpetrators, but it also supports what is now the recentation testimony given by Patrick Roberts. Had the testimony been presented during trial it would have affected the questioning of Mr. Roberts and the outcome of this trial.

Odetha Boatwright would have further offered probative value to Petitioner's defense had she been called by counsel regarding her statements to the police that she witnessed all the men run away from the scene after the shooting. This fact is probative when weighed against the Prosecutions case that Mr. Towns was shot with a 32. caliber semi automatic handgun that Petitioner received from Arteece Thomas and supposedly took to the scene where the shooting occurred. To be true this would mean that the shooting left behind physical evidence such as empty shell casings, considering the type of weapon used, and the statement that no one remained after the shooting and all men departed immediately indicates physical evidence would have been present.

As a necessity to the case responding police officers who secured the crime scene and retrieved evidence must be called to account for the lack of shell casings at the crime scene that they secured.

Detroit Police Officers Terrance Sims and Micheal Cook were the first responders, neither of which discovered any spent casings.

Evidence technicians Frank Horan and Eugene Fitzhugh gathered the physical evidence at Towns residence and did not log any spent casings.

Counsel Taratuta must be allowed to answer why he ignored this evidence in light of Petitioner's claims of innocent that was consistent throughout his trial stage. It is recognized that an alibi defense is not merely a defendant asserting he was somewhere else at the time of the commission of the crime, it is recognized that if the defendant who alleges he has an alibi is belived, then the case built around him and must at some point be found to be illusory. Therefore, an alibi defense of necessity, involves piecing apart the prosecutions theory as the theory can not stand under the presentation of facts.

Counsel Taratuta must be allowed to explain why he neglected to explore more fully the benefits that Petitioner's co-defendants received in exchange for their plea agreements. Given the credibility factor that this line of question is meant to address no trial strategy can be said to exist to warrant failing to challenge the credibility of the co-defendant's testimonies. Moreover, the State Court in its ruling has rejected the claim

9

that counsel Taratuta has in fact, fallen short in questioning co-defendants, but asserts that it was a result of external impediment by the court which prohibited counsel from eliciting the testimony. It then becomes necessary that an evidentiary hearing be granted to allow Petitioner to explore this reasoning. The record reveals that the Court did in fact intervene in the questioning of co-defendant Patrick Roberts, however, the Court made no intervention of Lynell Drake, nor Jonathan Nettles. The line of questioning for each was identical, neither of which went beyond a cursory exploration that plea agreements were entered into in exchange for testimony.

The true question being whether a motive to lie existed in light of the severe consequences of any refusal to cooperate with the Prosecution, and more so that what the State findings seems to suggest is that it recognizes that due to the prosecution's intentional delaying of accepting the plea agreements for co-defendants Nettles, Drake and Roberts, that it intentionally held the final phase of their agreement, the sentencing until after the trial of Petitioner and therefore as a result made it impossible for counsel Taratuta to explore the agreement as far as what penalties each co-defendant received for his cooperation.

Should this be the case, it is still a question for counsel Taratuta to resolve, why no objection to this point was made.

Petitioner must be allowed the opportunity to cross-examine counsel Taratuta in regards to his failure to object to the jury instructions that the testifying co-defendants were disputed

10

accomplices rather than actual accomplices. The jury instruction was misleading, in that it allowed the jury leverage that which they did not have to view the co-defendants as accomplices, where it was undisputed that each co-defendant had actual participation in the crime that Petitioner stood accused of. This erroneously removed from the jury the responsibility to question the credibility of the testimony provided by co-defendants Nettles, Drake and Roberts, and was prejudicial to Petitioner. A proper jury instruction would have affected the outcome of trial, given the inconsistency of the three testimonies, the inability of two of the three co-defendants who admittedly were at the scene of the shooting to positively identify Petitioner as the shooter, given the absolute absence of motive for shooting by Petitioner the probability that one juror, if given the proper instruction would have found reasonable doubt to acquit Petitioner was very likely.

Petitioner must be allowed to cross-examine counsel Taratuta regarding his failure to argue that Petitioner was entitled to an instruction that Intoxication was a defense to the specific-intent crime of First Degree Murder. In light of testimony by co-defendant Patrick Roberts as well as Petitioner, sufficient evidence to suggest Petitioner was intoxicated on the day of the shooting of Darryl Towns, and the fact that intoxication is an affirmative defense to the specific-intent crime of First Degree Murder, counsel Taratuta should have argued for the intoxication jury instruction. A failure to do so, can be deemed ineffective assistance <u>Rummel v. Estelle</u>, 498 F.Supp 793

(W.D.Tex.1980). No trial strategy can be said to exist where counsel neglects to seek an avenue which will automatically negate a jury's ability to consider convicting his client of mandatory life. Petitioner as a result, can not be said to have had a reliable proceeding, as the proper jury instruction would have resulted in a conviction of a lesser offense, if not acquittal.

Petitioner must be allowed the opportunity to cross-examine counsel Taratuta regarding his failure to object to the Court's defective reasonable doubt jury instructions. Counsel's explanation would place clarity on the level of legal comprehension counsel possessed at this stage of Petitioner's trial which is instrumental in Petitioner's requirement to satisfy the Strickland, standard.

Petitioner must be allowed to fully demonstrate that his representation falls below the 6th Amendment requirement, and this responsibility cannot be met without the provisions of an evidentiary hearing whereby counsel can be questioned. The Strickland, standard requires Petitioner to demonstrate that counsel Taratuta's representation (1) fell below an objective standard of reasonableness.

This first prong automatically requires Petitioner to dispute the presumption that counsel actions were trial strategy which can not be expected to be done, absent a cross-examination of counsel Taratuta.

Petitioner must also demonstrate (2) that due to counsel unprofessional errors that the results of the proceedings would have been different.

12

Therefore Petitioner must be granted the opportunity to develop the factual record to allow for proper review of his 6th Amendment claims.

10. Petitioner seeks an evidentiary hearing to develop his claim, that his 6th and 14th Amendment Rights were violated by the Court's refusel to grant his motion for substitution of counsel.

Petitioner has raised various 6th Amendment claims that arose during the course of his representation by counsel Taratuta. Not withstanding these claims Petitioner seeks the opportunity to make a record of his reasons for requesting replacement of counsel at the time his Motion for substitution of counsel was made.

Judge Warfield Moore Jr. continuously interrupted Petitioner as he attempted to state "Good Cause" why substitution was warranted.

Judge Moore's refusal to grant Petitioner's motion was an abuse of discretion, absent a full accounting of the nature of Petitioner's request, as well as the absence of a proper inquiry by the court.

Petitioner attempted to express that a conflict of interest had created a break-down of his relationship with counsel Taratuta.

The conflict being rooted in Petitioner's ignorance of what direction counsel Taratuta intended to take his defense on the offense of First Degree Murder.

Petitioner's objection came during counsel's attempt to question Petitioner's mother about Petitioner's mental competence.

Petitioner had no knowledge that counsel intended to abandon his alibi defense until minutes before he entered the court room for the beginning of his trial.

Had Petitioner been allowed the opportunity to present his reasoning for requesting substitution counsel, the matter had the chance of being properly resolved. Whether it resulted in the replacement of counsel or not, the court would have been made aware of Petitioner's concerns and possibly more inclined to explain to Petitioner a lay person, the intricate procedures and safeguards of his right to trial.

Judge Moore's improper conduct, (which has been demonstrated numerous times before, and resulted in his suspension from his judicial duties In re Moore 464 Mich 98, 119; 626 NW2d 374 (2001)) for failing to allow Petitioner the opportunity to establish "Good Cause" for substitution of counsel was an abuse of discretion. However, proper review to make this determination requires an evidentiary hearing for Petitioner to develop the factual record to support this claim.

An evidentiary hearing is also required, due to the manner in which Judge Moore resolved this motion. In refusing to perform a proper inquiry, Judge Moore instead placed the responsibility on counsel Taratuta to divulge his own ineffectiveness. This in and of itself created a conflict of interest. U.S. v. Delmoro, 87 F3d 1078 (9th Cir. 1996): (The district court created conflict of interest by forcing counsel to prove his own ineffectiveness).

Petitioner was attempting to show that a conflict of interest had already been created that was irreconcilable prior

14

to the commencement of trial, but was denied his right to do so. The Court's insufficient manner of addressing Petitioner's concerns further complicated the situation and even had it been determined, Petitioner's reasonings were insufficient to replace counsel Taratuta, the Court's creation of a irreconcilable conflict by shifting the burden of investigating counsel's ineffectiveness made it impossible for Petitioner to be properly represented by counsel Taratuta.

No defendant can be said to be properly represented where a conflict of interest exists. Cuyler v. Sullivan, 446 U.S. 261, 67 L Ed2d 220, 101 S.Ct. 1097 (1981).

Counsel Taratuta, once given the erroneous burden of divulging his ineffectiveness, became servent of two masters. He was expected to represent Petitioner without violation, while at the same time to make no conduct which would reveal he had been ineffective in any pre-trial conduct.

Petitioner's allegations of counsel Taratuta cites numerous omissions and failures to object to the prosecution presentation of the case against Petitioner. Conduct Petitioner alleges belies sound trial strategy.

It can not be assumed that after Judge Moore's placing upon counsel Taratuta the burden to divulge whether he had been ineffective in representing Petitioner that this did not affect his trial strategy from that point on.

A decision beneficial for Petitioner that would run afoul to exposing a lack of preparation on counsel's part presumably would be ignored.

15

Petitioner has asserted a claim of innocence and presented alibi evidence including an un-interviewed alibi witness. Counsel's failures to contact this witness and substantiate her testimony automatically risks exposure were he to challenge rigorously the prosecution's lack of physical evidence to link Petitioner to the death of Darryl Towns.

The theory that Petitioner had obtained the murder weapon from Arteece Thomas earlier on in the day of the shooting would reasonably be challenged from the lack of ejected shell casings, a fact that failure to endorse police witnesses never revealed to the court or jury further in relevancy witness Odetha Boatwright, who was also waived, would have challenged through testimony any concept that those men involved in the shooting of Mr. Towns picked up or moved any shell casings prior to running away. Ms. Boatwright gave statements that once she heard gunshots she saw everyone immediately runaway, thus indicating contradictory evidence theory and for factual basis regarding cause of death and perpetrator.

These statements and the lack of physical evidence would only bolster Petitioner's alibi, however, introduction of these statements and pointing out of the lack of physical evidence would also magnify counsel Taratuta's unpreparedness to present Petitioner's alibi defense.

Petitioner must be allowed to develop the facts of this issue to fully show how his 6th Amendment right to counsel had been denied prior to his request to replace counsel and how his 14th Amendment right to a fair trial was denied when the Court

16

abused its discretion in denying his request for substitution of counsel. Petitioner must be allowed to show that Judge Moore made no inquiry into his reasoning for making a request to replace counsel, but that Judge Moore placed that responsibility on counsel Taratuta. Petitioner must be allowed to show that counsel Taratuta represented him under a conflict of interest that the relationship between him and counsel had broken down prior to trial, and that it was only maginified through Judge Moore's improper conduct.

For these stated reasons, Petitioner requests an evidentiary hearing to develop the factual record and allow for proper review of his federal claim.

The AEDPA ban of 28 USC §2254(e)(2) should not be held to Petitioner, and his request for an evidentiary hearing should be granted.

Damon L. Smith #311644
Pro Per
Saginaw Corr. Fac.
9625 Pierce Road
Freeland, MI 48623

17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMON L. SMITH,
          Petitioner,

                              CASE NO. 04-CV-74233-DT
                              HONORABLE LAWRENCE P. ZATKOFF
v.                            UNITED STATES DISTRICT JUDGE
                              HONORABLE VIRGINIA M. MORGAN
                              UNITED STATES MAGISTRATE JUDGE
BLAINE LAFTER,
          Respondent.

_____/                      F I L E D
                                              FEB 24 2006
311644 DAMON L. SMITH                        CLERK'S OFFICE
Saginaw Correctional Facility                  DETROIT
9625   Pierce Road
Freeland, MI  48623          MICHAEL A. COX
                             ATTORNEY GENERAL
                             Raina Korbakis (P49467)
                             Assistant Attorney General
                             Attorney for Respondent
                             Criminal Appellate Division
                             P.O. Box  30217
                             Lansing, MI  48909
                             (517) 373-4875


## BRIEF IN SUPPORT OF MOTION FOR EVIDENTIARY HEARING


          PETITIONER DAMON L. SMITH, has brought forth a habeas
corpus action pursuant to 28 USC § 2254.  This application has
been filed after the application of the enactment of the
Antiterrorism ad Effective Death Penalty Act, PUB. L. 104-132,
110 STAT. 1214("AEDPA"), the provisions of that law govern the
scope of the Court's review. PENRY v JOHNSON, 532 U.S. 782, 791,
121 Sct 1910, 150 LEd 2d 9 (2001).

          Petitioner has raised multiple claims, of Constitutional
violations that have occurred in the State Court, resulting in
the conviction that he is currently seeking habeas relief on.

          Of these claims, there are those that Petitioner has
not been allowed to develop the factual basis for, here and now
within this application for Habeas Review, seeks an Evidentiary

Hearing to establish his factual record.

The AEDPA prevents Federal Evidentiary Hearings under its prohibition found in 28 USC § 2254(e)(2) which provides:

(e)(2)   If the applicant has failed to develop the factual basis of a claim in State Court proceedings, the Court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

>   (A) The claim relies on--
>
>   >   (1)   A new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or
>   >
>   >   (2)   A factual predicate that could not have been previously discovered through the exercise of due diligence, and
>
>   (B) The facts underlying the claim would be sufficient

to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

Petitioner rest his request for this Evidentiary Hearing upon the Supreme Court ruling of <u>MICHEAL WILLIAMS v TAYLOR</u> 529 US 420, 120 Sct 1479, 146 LEd 2d 435 (2000).

Under this ruling, the Supreme Court interpreted this particular provision, and concluded that "failure" [to develop] necessary implies a lack of diligence on the part of the Petitioner.

Petitioner has made every effort to acquire an evidentiary hearing at the state level for his claims which requires a development of the factual basis to support them.

Petitioner's 6th Amendment claims of Ineffective Assistance of Counsel, were presented to the State Court, accompanied by a timely Motion to Remand, pursuant to <u>MCR 7.211(c)</u>, supported by sworn affidavit.

The State Court, denied Petitioner's Motion to Remand without explanation, whereby it proceeded to deny Petitioner's 6th Amendment claims, because there was no record to support

the factual basis of the claims.

Petitioner's Motion to remand identified valid, 6th Amendment issues, which requires an initial decision by trial Judge, and therefore should have been granted. PEOPLE v GARN 414 M 859, 322 NW 2d 174 (1982), also PEOPLE v BOUDEN 393 M 253, 227 NW 2d 213 (1974).

Both GARN AND BOUDEN found error in the Court of Appeals' failure to grant a Motion to Remand. In BOUDEN THE underlying claim is identical to Petitioner's, seeking an evidentiary hearing on ineffective assistance of counsel.

The state Court's failure to follow it's own precedence, cannot be held against Petitioner, where he complied with the proper procedures and did not neglect his duty to pursue the avenues at his disposal.

The Federal Court has followed this same principle. See MORRIS v WOODFORD 229 F3d 775, 791 (9th Cir): (Claims denied by State Court without evidentiary hearing could not be faulted for lack of factual records in the State Court). WOODFORD AT 791.

See also SIRIPONGS v CALDERON 35 F3d 1308 (9th Cir. 1994): (In a capital case, a habeas Petitioner who asserts a colorable claim for relief, and who has never been given the opportunity to develop a factual record on that claim, is entitled to an evidentiary hearing in federal court).

Petitioner has presented newly discovered evidence, in the form of recanted statements, provided by co-defendant Patrick Roberts. The statements provided by Mr. Roberts, clearly states, that he falsely testified at Petitioner's trial out of fear for his life, and the life of his family.

The evidence newly discovered, raises allegations that if proven true requires reversal of the conviction Petitioner received as a result of Mr. Roberts testimony.

It is only Mr. Roberts who independently claimed to have seen Petitioner shoot the deceased, Darryl Towns.

Until allowed to cross-examine Mr. Roberts, regarding this newly discovered evidence. Petitioner cannot be expected

to present the issue sufficiently for federal review.

In light of the Supreme Court ruling of HERRERA v COLLINS 506 US 390, 113 Sct 853, 122 ED.2d 203 (1993) which states, that claims of actual innocents based upon newly discovered evidence are not grounds for Federal habeas relief, absent a showing of a Constitutional violation. Petitioner must be allowed to explore this issue to fully develop the material facts to support this claim.

Until Mr. Roberts is deposed in a court of law it will not be determined who did, or should have known that the testimony provided at trial was fabricated.

Petitioner has already made 6th Amendment claims that his attorney was ineffective for failing to fully question his testifying co-defendants as to the full extent of the plea agreement they entered in exchange for their testimony against Petitioner.

Petitioner has also raised the claim that he was represented by an attorney performing under a conflict of interest, who as a result did not make decisions necessarily in the best interest of Petitioner.

To be cognizant, Petitioner's newly discovered evidence must attach to some Constitutional violation, and given the severity of the allegations this evidence raises the opportunity to explore this claim, should be deemed to outweigh the AEDPA ban of 28 USC § 2254(e)(2).

Through no fault of his own, Petitioner has not been allowed to develop the factual basis of this claim. Petitioner has submitted in the State Court both the letter written by Mr. Roberts as well as the sworn affidavit signed by Mr. Roberts, stating unequivocally, that he did not testify truthfully at Petitioner's trial.

Petitioner submitted this evidence to the State Court within his motion to remand, alond with other colorable claims, but the Court rejected his Motion to Remand. This deprived Petitioner of the opportunity to develop the factual basis of this claim, and therefore prove the authenticity of Mr. Roberts